20-CV-9840 (GHW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER RODRIGUEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, E.S.U. CAPTAIN MOISE #1451, E.S.U. OFFICER GALUZEVSKIY #8957, E.S.U. OFFICER TEMIR WILLIAMS #11475, CORRECTION OFFICER FERRARO #1805, CAPTAIN GIBSON,

Defendant.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
      *Attorney for Defendants City of New York, Moise, Galuzevskiy,[1] Williams, Ferraro, and Gibson*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Katherine J. Weall*
*Tel: (212) 356-5055*
*Matter No.: 2020-045742*

---

[1] Sued herein as "Officer Galuezvskiy."

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ IV

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ..........................................................................................2

       The August 31, 2020 Incident .................................................................2

       The December 4, 2020 Incident ...............................................................3

       The December 15, 2020 Incident .............................................................3

       The December 18, 2020 Incident .............................................................4

       Grievances/Exhaustion of Administrative Remedies ................................4

LEGAL STANDARD .................................................................................................4

ARGUMENT

       POINT I

              PLAINTIFF FAILED TO EXHAUST HIS
              ADMINISTRATIVE REMEDIES, AS REQUIRED
              BY THE PLRA ........................................................................5

       POINT II

              PLAINTIFF'S DELIBERATE INDIFFERENCE
              TO MEDICAL NEEDS CLAIM FAILS BECAUSE
              THE ALLEGED DEPRIVATION OF MEDICAL
              CARE WAS NOT SUFFICIENTLY SERIOUS .......................................8

       POINT III

              PLAINTIFF'S DELIBERATE INDIFFERENCE
              TO HIS CONDITIONS OF CONFINEMENT
              FAILS BECAUSE THE DEPRIVATION WAS
              NOT OBJECTIVELY SERIOUS AND
              PLAINTIFF HAS NOT IDENTIFIED THE
              OFFICIALS WHO ALLEGEDLY WERE
              DELIBERATELY INDIFFERENT .......................................................12

**Page**

POINT IV

      PLAINTIFF CANNOT SHOW THAT THE
      DEFENDANTS USED EXCESSIVE FORCE.........................................15

POINT V

      PLAINTIFF CANNOT SHOW A FIRST
      AMENDMENT RETALIATION CLAIM................................................17

POINT VI

      VERBAL HARASSMENT CANNOT FORM THE
      BASIS OF A § 1983 CLAIM ...................................................................19

POINT VII

      PLAINTIFF'S STATE LAW CLAIMS FAIL
      BECAUSE HE DID NOT FILE A NOTICE OF
      CLAIM ...................................................................................................20

POINT VIII

      PLAINTIFF FAILS TO PROVE A MONELL
      CLAIM ...................................................................................................21

POINT IX

      THE OFFICERS ARE ENTITLED TO
      QUALIFIED IMMUNITY ......................................................................22

POINT X

      PLAINTIFF'S FAILURE TO INTERVENE
      CLAIM MUST FAIL BECAUSE THERE WAS
      NO CONSTITUTIONAL VIOLATION...................................................24

POINT XI

      PLAINTIFF'S SUPERVISORY LIABILITY
      CLAIM AGAINST CAPTAIN MOISE FAILS .......................................25

**Page**

POINT XII

        OFFICER FERRARO HAD NO PERSONAL INVOLVEMENT IN ANY CONSTITUTIONAL VIOLATION AND MUST THEREFORE BE DISMISSED FROM THE CASE ..........................................................26

CONCLUSION....................................................................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Pages**

Anderson v. Branen,
    17 F.3d 552 (2d Cir. 1994) ...................................................................................24

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .........................................................................................4

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...................................................................................25, 26

Azurite Corp., Ltd. v. Amster & Co.,
    844 F. Supp. 929 (S.D.N.Y. 1994) (Sotomayor, J.) .................................................5

Bacon v. Evans,
    No. 20-CV-6337 (KMK), 2021 U.S. Dist. LEXIS 231335
    (S.D.N.Y. Dec. 1, 2021) ...................................................................................19

Benjamin v. Fraser,
    343 F.3d 35 (2d. Cir. 2003) ...............................................................................14

Bove v. New York City,
    No. 98 Civ. 8800 (HB), 1999 U.S. Dist. LEXIS 12112
    (S.D.N.Y. Aug. 5, 1999) ...............................................................................15-16

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994) ...............................................................................23

Casciani v. Nesbitt,
    659 F. Supp. 2d 427 (W.D.N.Y. 2009).................................................................4

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) .........................................................................................4

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998) ...............................................................................9

Charles Pateman v. The City Of White Plains, et al.,
    No. 17-CV-6156 (KMK), 2020 U.S. Dist. LEXIS 48191
    (S.D.N.Y. Mar. 25, 2020) ..............................................................................9, 22

Charles v. Gordon,
    No. 12-CV-8332 (CM) (JCF), 2013 U.S. Dist. LEXIS 178434
    (S.D.N.Y. Dec. 13, 2013) ...................................................................................6

**Cases**                                                                                    **Pages**

City of Los Angeles v. Heller,
    475 U.S. 796 (1986) .........................................................................................22

City of Okla. City v. Tuttle,
    471 U.S. 808 (1985) .........................................................................................22

City of Revere v. Mass. Gen. Hosp.,
    463 U.S. 239 (1983) ...........................................................................................9

Cole v. Fischer,
    379 Fed. App'x 40 (2d Cir. 2010).......................................................................19

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995) .................................................................................26

Darby v. Greenman,
    14 F.4th 124 (2d Cir. 2021) ..................................................................................9

Darnell v. Pineiro,
    849 F.3d 17 (2d Cir. 2017) .......................................................8, 9, 11, 12, 13, 14

Dawes v. Walker,
    239 F.3d 489 (2d Cir. 2001),
    overruled on other grounds, Swierkiewicz v. Sorema N.A.,
    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ........................................17

De La Motte v. Menifee,
    00 Civ. 0555 (CLB)(GAY), 2001 U.S. Dist. LEXIS 24644
    (S.D.N.Y. Oct. 3, 2001)
    adopted by De La Motte v. Menifee, 00 Civ. 0555 (CLB)(GAY),
    2001 U.S. Dist. LEXIS 24643 (S.D.N.Y. Nov. 9, 2001).......................................5

DeArmas v. Jaycox,
    No. 92 Civ. 6139 (LMM), 1993 U.S. Dist. LEXIS 1292
    (S.D.N.Y. Feb. 5, 1993).....................................................................................15

Delgado v. Dembar,
    13 Civ. 191 KBF, 2014 U.S. Dist. LEXIS 135569
    (S.D.N.Y. Sept. 24, 2014)....................................................................................8

Dorsett v. County of Nassau,
    732 F.3d 157 (2d Cir. 2013) ...............................................................................18

Dwares v. City of N.Y.,
    985 F.2d 94 (2d Cir. 1993) .................................................................................21

**Cases**                                                                                                                              **Pages**

Estelle v. Gamble,
    429 U.S. 97 (1976) .......................................................................................................9

Feinberg v. City of New York,
    99 CV 12127, 2004 U.S. Dist. LEXIS 16098
    (S.D.N.Y. Aug. 13, 2004) ..........................................................................................25

Flores v. City of N.Y.,
    2022 U.S. Dist. LEXIS 140941...............................................................................18-19

Foy v. City of New York,
    03 Civ. 7318 (HB), 2004 U.S. Dist. LEXIS 18274
    (S.D.N.Y. Sep. 10, 2004)............................................................................................25

Francis v. City of N.Y.,
    18-CV-6546 (CM), 2019 U.S. Dist. LEXIS 48329
    (S.D.N.Y. March 20, 2019) ................................................................................. 17, 18

Gill v. Pidlypchak,
    389 F.3d 379 (2d Cir. 2004) .....................................................................................17

Gonzalez v. City of Schenectady,
    728 F.3d 149 (2d Cir. Aug. 28, 2013) .....................................................................23

Graham v. Henderson,
    89 F.3d 75 (2d Cir. 1996) .........................................................................................17

Hathaway v. Coughlin,
    99 F.3d 550 (2d Cir. 1996) .........................................................................................8

Hayes v. Perotta,
    751 F. Supp. 2d 597 (S.D.N.Y. 2010)......................................................................22

Hill v. Curcione,
    657 F.3d 116 (2d Cir. 2011) .....................................................................................10

Hunter v. Bryant,
    502 U.S. 224 (1991) (per curiam)........................................................................23-24

Islam v. Goord,
    No. 05 Civ. 7502 (RJH), 2006 U.S. Dist. LEXIS 71853
    (S.D.N.Y. Sept. 29, 2006)..........................................................................................18

Jean-Laurent v. Wilkinson,
    540 F. Supp. 2d 501 (S.D.N.Y. 2008) ......................................................................25

**Cases**                                                                                          **Pages**

Jones v. Bock,
    549 U.S. 199 (2007) ......................................................................................... 6-7

Landron v. City of N.Y.,
    14 Civ. 1046 (NRB), 2014 U.S. Dist. LEXIS 163045
    (S.D.N.Y. Nov. 6, 2014) ................................................................................... 6, 8

Malley v. Briggs,
    475 U.S. 335 (1986) ...........................................................................................24

Martinez v. City of N.Y.,
    No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203
    (S.D.N.Y. June 27, 2008),
    aff'd Martinez v. Muentes, 340 Fed. Appx. 700
    (2d Cir. July 27, 2009) .......................................................................................22

Massey v. City of N.Y.,
    2018 U.S. Dist. LEXIS 164288..............................................................................7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) .............................................................................................5

McCoy v. Goord,
    255 F. Supp. 2d 233 (S.D.N.Y. 2003) ..................................................................27

Neal v. Goord,
    267 F.3d 116 (2d Cir. 2001) ..................................................................................6

Nussle v. Porter,
    534 U.S. 516 (2002) ..............................................................................................6

O'Neill v. Krzeminski,
    839 F.2d 9 (2d Cir. 1988) ..............................................................................24, 25

Patterson v. Lilley,
    02 Civ. 6056 (NRB), 2003 U.S. Dist. LEXIS 11097
    (S.D.N.Y. June 30, 2003) ...................................................................................10

Patterson v. Westchester Cnty.,
    No. 13 Civ. 0194 (PAC) (AJP), 2014 U.S. Dist. LEXIS 50763
    (S.D.N.Y. Apr. 11, 2014),
    adopted at 2014 U.S. Dist. LEXIS 82437 (S.D.N.Y. June 16, 2014) ...................11

Paulin v. Town of New Windsor,
    18-CV-06182 (PMH), 2020 U.S. Dist. LEXIS 184170
    (S.D.N.Y. Oct. 5, 2020)........................................................................................8

**Cases**                                                                                          **Pages**

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995) ..................................................................................4

Rivera v. City of N.Y.,
    1:20-cv-9968-GHW, 2022 U.S. Dist. LEXIS 87083
    (S.D.N.Y. May 13, 2022) ...............................................................................21

Rivera v. Goord,
    119 F. Supp. 2d 327 (S.D.N.Y. 2000)..............................................................19

Rodriguez v. City of N.Y., Captain Dante Mack, and C.O. Quincy John,
    21-cv-1384 (GHW) ........................................................................................10

Rodriguez v. Cohall,
    21-cv-1810 (JGK), 2022 U.S. Dist. LEXIS 76633
    (S.D.N.Y. Apr. 26, 2022) ...............................................................................10

Rosales v. Fischer,
    No. 07 Civ. 10554 (LAP) (DFE), 2009 U.S. Dist. LEXIS 35033
    (S.D.N.Y. Mar. 31, 2009)...............................................................................15

Salahuddin v. Goord,
    467 F.3d 263 (2d Cir. 2006) ...........................................................................10

Sanders v. Cty of N.Y.,
    No. 16 Civ. 7426 (PGG), 2018 U.S. Dist. LEXIS 105814
    (S.D.N.Y. June 25, 2018) .................................................................................7

Santos v. N.Y. City Dep't of Corr.,
    08 Civ. 8790 (GBD)(THK), 2010 U.S. Dist. LEXIS 28799
    (S.D.N.Y. Feb. 25, 2010),
    adopted by Santos v. N.Y. City Dep't of Corr., 08 Civ. 8790 (GBD)(THK),
    2010 U.S. Dist. LEXIS 28801
    (S.D.N.Y. Mar. 25, 2010) ...............................................................................16

Saucier v. Katz,
    533 U.S. 194 (2001) .......................................................................................25

Seabrook v. City of N.Y.,
    13-CV-6620(JPO), 2014 U.S. Dist. LEXIS 174207
    (S.D.N.Y. Dec. 16, 2014) .............................................................................. 5-6

Sims v. City of N.Y.,
    15 Civ. 2485 (AT), 2018 U.S. Dist. LEXIS 212966
    (S.D.N.Y. Dec. 17, 2018) ..............................................................................9-10

**Cases**                                                                                                    **Pages**

Smith v. Campbell,
    782 F.3d 93 (2d Cir. 2015) ................................................................................18

Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp.,
    No. 03-CV-1414 (MP), 2003 U.S. Dist.
    LEXIS 22655 (S.D.N.Y. Dec. 16, 2003)..................................................................5

Tangreti v. Bachmann,
    983 F.3d 609 (2d Cir. 2020) ......................................................................... 25, 26

Taravella v. Town of Wolcott,
    599 F.3d 129 (2d Cir. 2010) ................................................................................23

Twin Laboratories, Inc. v. Weider Health & Fitness,
    900 F.2d 566 (2d Cir. 1990) ..................................................................................4

Vatansever v. City of N.Y.,
    01 Civ. 11621 (WHP), 2005 Dist. LEXIS 34658
    (S.D.N.Y. Sept. 28, 2005)
    aff'd, 210 F. App'x 26 (2d Cir. 2006).............................................................. 15, 16

Vazquez v. Spear,
    12 CV 6883 (VB), 2014 U.S. Dist. LEXIS 113018
    (S.D.N.Y. Aug. 5, 2014 )......................................................................................10

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000),
    cert. denied, 540 U.S. 811 (2003) ..........................................................................5

White v. N.Y.,
    00 Civ. 3434 (LMM)(AJP), 2002 U.S. Dist. LEXIS 18791
    (S.D.N.Y. Oct. 3, 2002).........................................................................................6

White v. Pauly,
    580 U.S. 73 (2017) ..............................................................................................23

Willey v. Kirkpatrick,
    801 F.3d 51 (2d Cir. 2015) ..................................................................................13

Williams v. City of N.Y.,
    21-CV-1083 (PGG)(KHP), 2022 U.S. Dist. LEXIS 140969
    (S.D.N.Y. Aug. 5, 2022).......................................................................................13

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) ..................................................................................26

**Cases**                                                                                           **Pages**

Yancey v. Robertson,
  828 Fed. App'x 801 (2d Cir. 2020) ..........................................................................8

**Statutes**

42 U.S.C. § 1983 ................................................................ 1, 6, 14, 17, 19, 21, 26, 27

42 U.S.C. § 1997e(a) ..........................................................................................6

Fed. R. Civ. P. 56(c) ..........................................................................................4

G.M.L. § 50-e(1)(a) ..........................................................................................20

G.M.L. § 50-k(6) ..........................................................................................20

## PRELIMINARY STATEMENT

Plaintiff Peter Rodriguez brings a plethora of claims against various Department of Correction ("DOC") employees for violations of his rights.  He sues Captain Shaday Gibson for deliberate indifference to his medical needs pursuant to §1983, despite that he declined medical attention on the day of the incident and that his alleged injuries were not sufficiently serious to support a claim for deliberate indifference; he sues Captain Gibson for deliberate indifference to his conditions of confinement despite the fact that any deprivation he suffered was not objectively serious; he sues Officers Aleksandr Galuzevskiy and Temir Williams for use of excessive force, despite the fact that any force used against him was incidental and/or reasonable; he sues Officer Galuzevskiy for First Amendment retaliation and harassment, despite the fact that Officer Galuzevskiy took no action against him that could be considered retaliation or harassment and that on the dates the alleged retaliation/harassment took place, Officer Galuzevskiy had not yet been named in this lawsuit; he sues Officer Peter Ferraro for failure to intervene in the use of excessive force, despite the fact that Officer Ferraro left the scene before any of the incidents plaintiff complains of took place; he sues Captain Moise for supervisory liability, despite the fact that such a claim cannot be supported under the law; he sues the City of New York for municipal liability, despite the fact that he can only point to his own case as an example of any failure to train by the City; and finally, plaintiff sues Officers Williams and Galuzevskiy under state law for assault and battery, and brings a respondeat superior claim against the City of New York, despite the fact that he never filed a Notice of Claim in relation to this action.  Plaintiff is blaming DOC officers for the consequences of his own actions – setting a fire in his cell.  All his claims fail for the reasons set forth herein and his case must be dismissed in its entirety and with prejudice.

## STATEMENT OF FACTS

### The August 31, 2020 Incident

On August 31, 2020, there was a fire in the cell of Peter Rodriguez, then an inmate housed in Cell 3 on floor 9 South at the Manhattan Correctional Center ("MDC"), which is Enhanced Security Housing. 56.1 ¶¶ 6, 7, 12. On that date, plaintiff was locked alone in his cell. 56.1 ¶ 10, 11.

Correction Officer Ferraro responded to plaintiff's cell with a fire extinguisher. 56.1 ¶¶ 13,14. E.S.U. Captain Moise and E.S.U. Officers Galuzevskiy, Williams, and Lewis[2] also responded to plaintiff's cell. 56.1 ¶¶ 13,15. Captain Moise instructed Officer Ferraro to leave, which Officer Ferraro did. 56.1 ¶ 15. Officer Galuzevskiy then opened plaintiff's cell to extinguish the fire, using a water-based fire extinguisher in order to do so. 56.1 ¶ 17. In the course of extinguishing the fire, plaintiff was sprayed with the water from the fire extinguisher. 56.1 ¶ 18.

Perceiving an imminent threat to their safety, Officers Williams and Lewis deployed OC spray on plaintiff in an effort to control him. 56.1 ¶ 19. Plaintiff was then escorted out of the area and, because he had been exposed to OC spray, was taken to Intake for decontamination in a shower. 56.1 ¶ 20. After that, Captain Gibson was finally able to escort plaintiff to the Clinic, where he denied any injury or pain to medical personnel. 56.1 ¶¶ 21, 22. Medical personnel noted their observation that plaintiff had no visible injuries, had "no respiratory distress" and complained only of mild shortness of breath. 56.1 ¶¶ 23, 24. After denying he was injured, plaintiff was returned to his cell. 56.1 ¶¶ 22, 26.

---

[2] Officer Lewis is not sued herein, despite his name having been disclosed to plaintiff in response to the Court's <u>Valentin</u> Order of December 1, 2020, ECF No. 6.

According to plaintiff, his cell was not cleaned between the time the fire was extinguished and he was returned to it at least five hours later, and that, as a result, it was filled with OC spray and smoke.  56.1 ¶ 27.  Although plaintiff pointed out the condition of his cell to Captain Gibson, he does not claim that any defendant refused to clean his cell or refused to give him cleaning supplies to clean the cell.  56.1 ¶ 28. Furthermore, at no time did plaintiff file a grievance or call 311 over this condition.  56.1 ¶ 39, 42.

**The December 4, 2020 Incident**

Plaintiff alleges that Officer Galuzevskiy approached his cell and asked if he was suing him on or about December 4, 2020. 56.1 ¶ 29.  However, plaintiff's original Complaint, filed on November 20, 2020, did not name Officer Galuzevskiy as a defendant, and no complaint naming him had been filed as of December 4, 2020.  56.1 ¶ 30.  It is therefore unclear why Officer Galuzevskiy would ask such a question, or how he would have knowledge that plaintiff was considering suing him. There was no other exchange between plaintiff and Officer Galuzevskiy on this date. 56.1 ¶ 31.

**The December 15, 2020 Incident**

According to plaintiff, Officer Galuezevskiy approached him again on December 15, 2020.  56.1 ¶ 32.  Officer Galuzevskiy came up to him in the shower area and stated "If you don't drop the lawsuit, you will be deadlocked in your cell for the rest of the night."  56.1 ¶ 32. There was no other exchange between plaintiff and Galuzevskiy on that occasion.  56.1 ¶ 33.

Notably, as of December 15, however, no complaint naming Officer Galuzevskiy as a defendant had yet been filed.  56.1 ¶ 34.  It is therefore unclear why Officer Galuzevskiy would approach plaintiff asking him to drop a lawsuit that had not yet been filed.

**The December 18, 2020 Incident**

According to plaintiff, on December 18, 2020, Officer Galuzevskiy approached his cell, waived his fist aggressively, and stated "while I am here you stay in your cell."  56.1 ¶ 35.  Officer Galuzevskiy said nothing else to plaintiff. 56.1 ¶ 36. As of December 18, 2020, no complaint naming Officer Galuzevskiy as a defendant had yet been filed.  56.1 ¶ 37.

Plaintiff was seen by medical professionals on December 17, 2020, and again on December 19-22.  56.1 ¶ 38. On none of these visits did plaintiff complain of being harassed and/or threatened by any correction officer. 56.1 ¶ 38.

Nothing in the record shows that any action was ever taken against plaintiff by a defendant as a result of plaintiff filing this lawsuit.

**Grievances/Exhaustion of Administrative Remedies**

Plaintiff did not file grievances, make 311 calls or otherwise pursue any administrative remedies in connection with any of the above-mentioned incidents.  56.1 ¶¶ 39, 42.

## LEGAL STANDARD

Summary judgment is appropriate if the record "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion.  Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).  However, "this standard does not simply require the court to draw all inferences in the non-movant's favor, but [only] all reasonable inferences." Casciani v. Nesbitt, 659 F. Supp. 2d 427, 434 (W.D.N.Y. 2009) (emphasis added).  In

4

determining whether an inference is reasonable, the Court "need not…credit unsupported factual allegations and innuendos." Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp., No. 03-CV-1414 (MP), 2003 U.S. Dist. LEXIS 22655, at *2 (S.D.N.Y. Dec. 16, 2003), citing Azurite Corp., Ltd. v. Amster & Co., 844 F. Supp. 929, 936 (S.D.N.Y. 1994) (Sotomayor, J.). To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811 (2003).

## ARGUMENT

### POINT I

### PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES, AS REQUIRED BY THE PLRA

The Second Amended Complaint ("SAC") in this action avers that plaintiff did not file any grievances in connection with any of the incidents alleged in the SAC. 56.1 ¶¶ 39, 42. Because he has failed to exhaust his administrative remedies, his claims for deliberate indifference to medical needs and deliberate indifference to conditions of confinement claims must fail.

A claim for deliberate indifference to medical care is considered a "prison condition" and requires an exhaustion of administrative remedies before suit may be brought. See, e.g. De La Motte v. Menifee, 00 Civ. 0555 (CLB)(GAY), 2001 U.S. Dist. LEXIS 24644, at *6 (S.D.N.Y. Oct. 3, 2001) adopted by De La Motte v. Menifee, 00 Civ. 0555 (CLB)(GAY), 2001 U.S. Dist. LEXIS 24643 (S.D.N.Y. Nov. 9, 2001). So, too, is any claim related to conditions of confinement, such as the condition of an inmate's cell. See, e.g., Seabrook v. City

of N.Y., 13-CV-6620(JPO), 2014 U.S. Dist. LEXIS 174207, at *8-10 (S.D.N.Y. Dec. 16, 2014).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Moreover, § 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes...." Nussle v. Porter, 534 U.S. 516, 532 (2002). Exhaustion of administrative procedures is a prerequisite even where the plaintiff seeks relief, such as money damages, not available in grievance proceedings. White v. N.Y., 00 Civ. 3434 (LMM)(AJP), 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct. 3, 2002).

Under Section 1997e(a), "[a]n inmate's failure to exhaust administrative remedies is an absolute bar to an action in federal court." Landron v. City of N.Y., 14 Civ. 1046 (NRB), 2014 U.S. Dist. LEXIS 163045, at *4 (S.D.N.Y. Nov. 6, 2014) (granting motion to dismiss and holding plaintiff must exhaust all administrative remedies, including grievance procedure) (quotation omitted); see also Neal v. Goord, 267 F.3d 116, 122-123 (2d Cir. 2001) (upholding dismissal of amended complaint and stating: "the plain language of § 1997e(a)…suggests that exhaustion prior to commencement of a § 1983 action is mandated."); Charles v. Gordon, No. 12-CV-8332 (CM) (JCF), 2013 U.S. Dist. LEXIS 178434 at 8-10 (S.D.N.Y. Dec. 13, 2013) (dismissing claims where plaintiff filed a grievance but did not seek a hearing, did not appeal to the commanding officer, and did not appeal to the central review committee).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. See Jones v. Bock, 549 U.S. 199, 218

(2007).   At New York City DOC facilities, inmates must follow the Inmate Grievance and Request Program (the "IGRP")[3] in order to properly meet the exhaustion requirement.   Massey v. City of N.Y., 20cv5665 (GBD)(DF), 2021 U.S. Dist. LEXIS 164288, at *14-15 (S.D.N.Y. Aug. 30, 2021) (collecting cases).   "The IGRP applies to '[a]ny inmate who is directly and personally affected by an issue, condition, practice, service, or lack of an accommodation with regard to any issue that may arise in connection with their incarceration or action relating to their confinement.'   IGRP §1."   Id. at *15.   The procedure mandated by the IGRP is as follows: first, an inmate must "either file a grievance, using the form 7101R ("OCGS Statement Form"), or call 311 to file a complaint.   IGRP §§ V(F), (H).   Within seven business days, the Grievance Coordinator will assess the inmate's submission and determine whether it should be dismissed and closed, referred to a different entity, or investigated further.   IGRP § VI(A)(1).   Upon the close of a further investigation, the Grievance Coordinator will meet with the inmate to propose a resolution.   Id.   If the inmate is not satisfied with the proposed resolution…he can then appeal to the Commanding Officer.   Id. § VII(A).   If the inmate is dissatisfied with the decision of the Commanding Officer, he may then submit an appeal to the Division Chief.   Id. § VIII(A)(1-2).   Lastly, if the inmate is dissatisfied with the decision of the Division Chief, he may appeal to the Central Office Review Committee ("CORC").   Id. § IX(A).   The CORC's disposition constitutes the final decision on the grievance."   Massey, 2021 U.S. Dist. LEXIS 164288, at *15-16.

Plaintiff does not even allege that he complied with the exhaustion requirement; indeed, he affirmatively states in his Second Amended Complaint that he failed to do so,

---

[3] The Court may take judicial notice of the IGRP.   Massey v. City of N.Y., 2018 U.S. Dist. LEXIS 164288, FN 9; see also Sanders v. Cty of N.Y., No. 16 Civ. 7426 (PGG), 2018 U.S. Dist. LEXIS 105814, at *4 n.1 (S.D.N.Y. June 25, 2018) ("It is a common practice in this District to take judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim." (internal quotation marks omitted)).   Directive 3376R-A was in effect on August 31, 2020, and is the governing grievance procedure in this action. 56.1 ¶ 40.

complaining that "[t]he grievance system is so opaque that it is impossible to follow." 56.1 ¶¶ 39, 42. But plaintiff has taken advantage of the grievance system in the past, making multiple calls to 311 to complain of various prison conditions, which is an acceptable method of grieving them. 56.1 ¶¶ 40, 41. Where "'a plaintiff's failure to exhaust his administrative remedies appears on the face of the complaint, dismissal is warranted.'" Landron, 2014 U.S. Dist. LEXIS 163045 at *4, quoting Delgado v. Dembar, 13 Civ. 191 KBF, 2014 U.S. Dist. LEXIS 135569, at *7 (S.D.N.Y. Sept. 24, 2014). For this reason, therefore, plaintiff's deliberate indifference to medical care and conditions of confinement claims must therefore fail.

## POINT II

**PLAINTIFF'S DELIBERATE INDIFFERENCE TO MEDICAL NEEDS CLAIM FAILS BECAUSE THE ALLEGED DEPRIVATION OF MEDICAL CARE WAS NOT SUFFICIENTLY SERIOUS**

Even if plaintiff had filed a grievance about a lack of, or delayed, medical care, his deliberate indifference to medical needs claim would still fail, because plaintiff has no proof that he suffered a medical condition that was sufficiently serious to give rise to such a claim. Claims for deliberate indifference to medical needs brought by pretrial detainees, like Plaintiff, "are governed by the Due Process Clause of the Fourteenth Amendment." Paulin v. Town of New Windsor, 18-CV-06182 (PMH), 2020 U.S. Dist. LEXIS 184170, at *16 (S.D.N.Y. Oct. 5, 2020), citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). These claims are reviewed using a two-prong approach. Under the objective prong, a plaintiff must allege, "that the alleged deprivation [is] sufficiently serious in the sense that [it is] a condition of urgency, one that may produce death, degeneration, or extreme pain." Yancey v. Robertson, 828 Fed. App'x 801, 803 (2d Cir. 2020), quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Under the "mental element prong," a plaintiff must allege that the defendant "acted intentionally to impose

the alleged condition, or recklessly failed to act with reasonable care … even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. Mere negligence is not enough, even for pre-trial detainees. Darnell, 849 F.3d at 36, citing Kingsley, 576 U.S. 389, 396 (2015) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). Plaintiff can meet neither prong.

First, to succeed on a deliberate indifference claim, a plaintiff must prove that he suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded. Estelle v. Gamble, 429 U.S. 97, 104 (1976)[4]; Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). The inmate must also "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his [or her] health." Charles Pateman v. The City Of White Plains, et al., No. 17-CV-6156 (KMK), 2020 U.S. Dist. LEXIS 48191, at *69 (S.D.N.Y. Mar. 25, 2020). The Second Circuit has presented the following non-exhaustive list of factors to consider when evaluating the seriousness of a detainee's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). Only "reasonable" medical care is required, and "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable." Sims v. City of N.Y., 15 Civ. 2485 (AT)(SDA), 2018 U.S. Dist. LEXIS 212966

---

[4] "The Court subsequently extended the protections for convicted prisoners established in Estelle to pretrial detainees under the Due Process Clause of the Fourteenth Amendment." Darby v. Greenman, 14 F.4th 124, 128 (2d Cir. 2021), citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

at *15 (S.D.N.Y. Dec. 17, 2018), quoting Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

Here, plaintiff claims that he suffered from "agitation of my asthma condition, numbness, pain in the wrists, pain in the eyes, fuzzy vision, reduced vision, nightmares, anxiety, depression, insomnia, and Post Traumatic Stress." 56.1 ¶ 25. None of these conditions meet the definition of a "serious medical condition," or one that is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). The S.D.N.Y. has recently rejected almost precisely these boilerplate allegations by this same plaintiff in another case filed by him. See Rodriguez v. Cohall, 21-cv-1810 (JGK), 2022 U.S. Dist. LEXIS 76633, *10–*11 (S.D.N.Y. Apr. 26, 2022), (dismissing plaintiff's claim where "the chemical agent aggravated his asthma and . . . he experienced 'breathing difficulties, chest pains, blurry vision, dizzyness [sic], skin burning/irritation, trauma, [and] anxiety.'")[5] In that case, the Honorable Judge Koeltl held that "[c]ourts in this Circuit have found consistently that plaintiffs who complained of similar injuries arising out of exposure to chemical agents while in custody failed to plead adequately that they suffered sufficiently serious injuries." Id. (citations omitted). Furthermore, having asthma is not, in and of itself, a "sufficiently serious" medical condition to support a deliberate indifference to medical care claim. Vazquez v. Spear, 12 CV 6883 (VB), 2014 U.S. Dist. LEXIS 113018, at *12-13 (S.D.N.Y. Aug. 5, 2014 ) ("Plaintiff's claim of deliberate indifference fails to meet the objective prong of the analysis, as his asthmatic condition alone does not impose a substantial risk of serious harm."), citing Patterson v. Lilley, 02 Civ. 6056 (NRB), 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 30, 2003).

---

[5] Plaintiff also brings these same allegations in a third case, Rodriguez v. City of N.Y., Captain Dante Mack, and C.O. Quincy John, 21-cv-1384 (GHW).

In any event, plaintiff did not actually complain of any of these conditions to medical personnel at MDC. When he was brought to the medical clinic, he told medical personnel that he denied injury or pain. 56.1 ¶ 22. The medical personnel made their own observations of plaintiff's condition, and noted that he showed "no signs of gross injury," 56.1 ¶ 23, had no visible injuries, 56.1 ¶ 23, showed "no respiratory distress," 56.1 ¶ 24, and complained only of "mild shortness of breath." 56.1 ¶ 24.

Second, plaintiff cannot meet the mental element prong. Plaintiff was taken for medical care after the incident on August 31, 2020. 56.1 ¶ 21. Plaintiff denied any injury or pain. 56.1 ¶ 22. Furthermore, doctors observed no visible injuries to plaintiff at that time, and noted that plaintiff complained only of "mild shortness of breath." 56.1 ¶¶ 23, 24. Under those circumstances, it cannot be said that the officer who escorted him for medical treatment "recklessly failed to act with reasonable care" or "knew, or should have known, that the condition posed an excessive risk to health or safety," Darnell, 849 F.3d at 35 – indeed, there was no "condition" requiring medical treatment here at all.

Moreover, to the extent plaintiff argues that did not receive medical attention until five hours after the incident, first, plaintiff was promptly decontaminated after officers Williams and Lewis deployed OC spray on him. Second, a delay of a few hours in accessing medical care for a non-serious condition is acceptable. Patterson v. Westchester Cnty., No. 13 Civ. 0194 (PAC) (AJP), 2014 U.S. Dist. LEXIS 50763, at *24 (S.D.N.Y. Apr. 11, 2014), adopted at 2014 U.S. Dist. LEXIS 82437 (S.D.N.Y. June 16, 2014) (three-day "delay in taking and reporting the results of an x-ray that revealed torn ankle ligaments…not…a sufficiently serious treatment delay"). In light of the foregoing, plaintiff has failed to establish a sufficiently serious medical

injury, or that his alleged deprivation of adequate medical care was sufficiently serious, and this claim must therefore fail.

### POINT III

**PLAINTIFF'S DELIBERATE INDIFFERENCE TO HIS CONDITIONS OF CONFINEMENT FAILS BECAUSE THE DEPRIVATION WAS NOT OBJECTIVELY SERIOUS AND PLAINTIFF HAS NOT IDENTIFIED THE OFFICIALS WHO ALLEGEDLY WERE DELIBERATELY INDIFFERENT**

Even if plaintiff had exhausted his administrative remedies regarding his conditions of confinement claim – which he did not, see Point I supra – his claim would still fail. To state a claim for deliberate indifference to conditions of confinement, a plaintiff must satisfy two prongs: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' – perhaps better classified as a 'mens rea prong' or 'mental element prong' –  showing that the officer acted with at least deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  Under the objective prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness."  Darnell, 849 F.3d at 30 (quotations omitted).  "[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Darnell, 849 F.3d at 30 (quotations omitted).  Unsanitary conditions, "such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation."  Id. (citation omitted).  "[T]he proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and

duration, not the detainee's resulting injury." <u>Id.</u> (citation omitted). "[T]here are many exposures of inmates to unsanitary conditions that do not amount to a constitutional violation," and "any analysis must consider both the duration and the severity of an inmate's experience of being exposed to unsanitary conditions." <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 68 (2d Cir. 2015). "Numerous courts have held that unpleasant or unsanitary conditions only rise to the level of a constitutional violation if they amount to an objectively and sufficiently serious denial of the minimal civilized measure of life's necessities." <u>Williams v. City of N.Y.</u>, 21-CV-1083 (PGG)(KHP), 2022 U.S. Dist. LEXIS 140969, at *43 (S.D.N.Y. Aug. 5, 2022) (report and recommendation), citing <u>Darnell</u> at 30-32.

The deprivations of which plaintiff complains do not rise to an unconstitutional level. Cases in which deliberate indifference to conditions of confinement has been found have involved much more severe circumstances than those faced by plaintiff here. Plaintiff complains that his cell was not cleaned after a fire extinguisher and OC spray was used inside of it, over the course of 12 hours. 56.1 ¶ 27. In contrast, in <u>Willey</u>, for example, the Second Circuit vacated the dismissal of an inmate's deliberate indifference claim where he was exposed to, <u>inter alia</u>, 1) a cell in which the toilet did not flush, exposing the inmate to human waste, and in which a Plexiglas cell shield had been placed over the bars, restricting air flow, for an unknown period, and 2) a filthy observation cell smelling of urine and feces, in which he was kept naked for fourteen days. And in <u>Darnell v. Pineiro</u>, 849 F.3d 17, 23-24 and 36-37 (2d Cir. 2017), the Second Circuit overturned a district court's grant of summary judgment to defendants because the "appalling" and "atrocious" conditions to which inmates were exposed, albeit only for periods of less than 24 hours, included cells overcrowded to the point where there was nowhere to stand, cells containing unusable toilets covered with "some combination of feces, maggots,

urine, vomit and rotten milk" and cells that had "feces and dried urine caked to the floors." Id. Plaintiff does not allege conditions even approaching such a level of severity.

Furthermore, in addition to showing sufficiently serious conditions of confinement, to establish a § 1983 claim for allegedly unconstitutional conditions of confinement, a plaintiff must also show "that the officers acted with at least deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29; see also Benjamin v. Fraser, 343 F.3d 35, 50 (2d. Cir. 2003). "[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell at 35.

This, plaintiff cannot show. First, plaintiff has not shown that the condition of his cell posed an excessive risk to his health and safety. Indeed, he does not now and did not at the time complain of any effects to his health stemming from the condition of his cell at all. There is no evidence in the record that he sought medical treatment for or made any complaints whatsoever related to possible exposure to water, lingering smoke, or lingering OC spray.

Moreover, plaintiff has not alleged (nor could he) that Captain Gibson "acted intentionally to impose the condition" of his cell, nor has he established that merely ordering him into his cell, without more, showed that she acted with "deliberate indifference" to his wellbeing or that she knew, or should have known, that the condition of his cell posed an excessive risk to his health or safety. Finally, he has not even identified any official – let alone any defendant – who refused to clean his cell or to allow him to clean his cell, 56.1 ¶ 28, nor has he established

14

that he actually notified any defendant that his cell was not clean.  Because plaintiff fails to meet either prong of the two-prong test to state a claim for conditions of confinement, plaintiff's claim must fail.

### POINT IV

### PLAINTIFF CANNOT SHOW THAT THE <u>DEFENDANTS USED EXCESSIVE FORCE</u>

Plaintiff makes an excessive force claim premised on his allegations that Officer Galuzevskiy sprayed him with a fire extinguisher and that Officers Williams and Lewis sprayed him with OC spray.  But because any harm to him was <u>de</u> <u>minimis</u>, plaintiff cannot prevail on this claim.  To prevail on a claim of excessive force, a plaintiff must, <u>inter</u> <u>alia</u>, prove that the harm to him was more than <u>de</u> <u>minimis</u>.  <u>Rosales v. Fischer</u>, No. 07 Civ. 10554 (LAP) (DFE), 2009 U.S. Dist. LEXIS 35033, at *24 (S.D.N.Y. Mar. 31, 2009) (citation omitted).  Plaintiff cannot do so, because, as detailed in Point II <u>supra</u>, his medical records show that he had no injuries other than "mild shortness of breath" on the day of the August 31, 2020 incident.  56.1 ¶¶ 23-25.  Plaintiff certainly has no evidence that his "mild shortness of breath" was caused by either being sprayed by a fire extinguisher or by OC spray.  The absence of any injury stemming from any alleged use of force defeats plaintiff's excessive force claim.  See <u>Vatansever v. City of N.Y.</u>, 01 Civ. 11621 (WHP), 2005 Dist. LEXIS 34658, at *7-10 (S.D.N.Y. Sept. 28, 2005) <u>aff'd</u>, 210 F. App'x 26 (2d Cir. 2006) (granting summary judgment to defendants on an inmate's excessive force claim because the absence of physical injury in his medical records undermined his excessive force claim); <u>DeArmas v. Jaycox</u>, No. 92 Civ. 6139 (LMM), 1993 U.S. Dist. LEXIS 1292 at *12 (S.D.N.Y. Feb. 5, 1993) (dismissing an inmate's excessive force claim because the medical records failed to reveal any bruising, swelling, redness, pain or any indication of physical injury); <u>Bove v. New York City</u>, No. 98 Civ. 8800 (HB), 1999 U.S. Dist.

LEXIS 12112 (S.D.N.Y. Aug. 5, 1999) (granting defendants' summary judgment motion because plaintiff's "allegations are completely contradicted by the hospital's records and, more importantly, are unsupported by any evidence other than the plaintiff's assertions").

Relatedly, an inmate cannot demonstrate that defendants' conduct was sufficiently severe where the medical records fail to support the inmate's alleged injuries. See Vatansever, 2005 Dist. LEXIS 34658, at *7-10 (granting summary judgment to defendants on an inmate's excessive force claim because the absence of physical injury in his medical records undermined his excessive force claim). Here, plaintiff's allegations of "agitation of my asthma condition, numbness, pain in the wrists, pain in the eyes, fuzzy vision, reduced vision, nightmares, anxiety, depression, insomnia, and Post Traumatic Stress," 56.1 ¶ 25, are "unsupported by any evidence other than [his own] assertions," Bove, 1999 U.S. Dist. LEXIS 12112 at *22 (granting defendants' summary judgment motion because plaintiff's "allegations are completely contradicted by the hospital's records and, more importantly, are unsupported by any evidence other than the plaintiff's assertions"); the medical records do not support them.

Moreover, no reasonable jury could consider the use of a fire extinguisher in plaintiff's cell by Officer Galuzevskiy to be excessive under the circumstances where it was necessary to put out a fire in plaintiff's cell. The only case on point in the Second Circuit, Santos v. N.Y. City Dep't of Corr., 08 Civ. 8790 (GBD)(THK), 2010 U.S. Dist. LEXIS 28799 (S.D.N.Y. Feb. 25, 2010), adopted by Santos v. N.Y. City Dep't of Corr., 08 Civ. 8790 (GBD)(THK), 2010 U.S. Dist. LEXIS 28801 (S.D.N.Y. Mar. 25, 2010), involved an officer who was indiscriminately spraying a fire extinguisher in order to punish another inmate, harming the plaintiff in the process. In Santos, there was no fire, and was no need for a fire extinguisher to be deployed. In contrast, here, Officer Galuzevskiy had a legitimate penological interest in using the

fire extinguisher – to put out the fire in plaintiff's cell.  At a minimum, Officer Galuzevskiy would be entitled to qualified immunity for his use of the fire extinguisher in this situation.  <u>See</u> Point IX, <u>infra</u>.

For these reasons, therefore, plaintiff's excessive force claim must be dismissed.

**POINT V**

**PLAINTIFF CANNOT SHOW A FIRST AMENDMENT RETALIATION CLAIM**

Plaintiff alleges that Officer Galuzevskiy retaliated against him for filing the instant lawsuit by threatening him.  Because he does not allege, nor has he demonstrated, that Officer Galuzevskiy took any <u>action</u> against him, however, this claim, too, must fail.

First Amendment retaliation claims "must be examined with skepticism and particular care because they are ''prone to abuse' since prisoners can claim retaliation for every decision they dislike."  <u>Francis v. City of N.Y.</u>, 18-CV-6546 (CM), 2019 U.S. Dist. LEXIS 48329, at *8, (S.D.N.Y. March 20, 2019) quoting <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996).  To state a First Amendment retaliation claim under §1983, a prisoner must allege facts showing that "(1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action."  <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).  An adverse action must be "retaliatory conduct . . . [that] would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . .  Otherwise, the retaliatory act is simply <u>de minimis</u> and therefore outside the ambit of constitutional protection."  <u>Dawes v. Walker</u>, 239 F.3d 489, 493 (2d Cir. 2001), <u>overruled on other grounds</u>, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); <u>see also</u> <u>Francis</u>, 2019 U.S. Dist. LEXIS 48329, at *8 (same).  Threats of retaliation, in and of

17

themselves, are not sufficient to satisfy the adverse action requirement.  See Islam v. Goord, No. 05 Civ. 7502 (RJH), 2006 U.S. Dist. LEXIS 71853, at *7 (S.D.N.Y. Sept. 29, 2006) ("To the extent plaintiff is alleging that [a corrections officer] retaliated against him for filing grievances by threatening to frame him at some future time[,] . . . a mere threat without more will not satisfy the adverse action requirement of a First Amendment retaliation claim");" Francis, 2019 U.S. Dist. LEXIS at *8. Plaintiff must also show that defendants' actions caused him some injury. Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) quoting Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

Where plaintiff's interactions with Officer Galuzevskiy are concerned throughout December 2020, plaintiff does not even allege, and there is certainly no proof, that Officer Galuzevskiy took any adverse action against him.  Indeed, no adverse action was ever even threatened, except on December 15, 2020, when Officer Galuzevskiy allegedly told Rodriguez that, if he didn't drop the lawsuit, he would be deadlocked in his cell.  56.1 ¶ 32.  However, plaintiff does not allege that he was deadlocked in his cell following this exchange.  In fact, nothing in the record shows that any action was taken by any defendant against plaintiff in retaliation for filing this lawsuit.  Mere threats of retaliation, without more, do not suffice to satisfy the adverse action requirement.  See Islam, 2006 U.S. Dist. LEXIS 71853, at *7.

To the extent plaintiff intends to argue a claim for First Amendment retaliation because his cell was left uncleaned for 12 hours after the fire on August 31, 2020, 56.1 ¶ 27, plaintiff has not pointed to any protected conduct or speech that would have turned this into an act of retaliation.  And even if he had, plaintiff alleges only a single episode of exposure to unsanitary conditions in his cell, for a period of 12 hours.  He "does not allege that the exposure was of any particular or significant severity."  Flores v. City of N.Y., 2022 U.S. Dist. LEXIS

140941 at *45-46.  Although he claims that the incident on August 31, 2020, as a whole, caused him to suffer from certain medical conditions, he does not specify that being forced to remain in a dirty cell for 12 hours was the specific cause of any of those conditions, nor does he have any proof that he ever complained of any medical damage.  This is not enough to state a retaliation claim.  For all of these reasons, therefore, plaintiff's First Amendment retaliation claim must fail.

**POINT VI**

**VERBAL HARASSMENT CANNOT FORM THE BASIS OF A § 1983 CLAIM**

Plaintiff argues that, on several occasions in December 2020, Officer Galuzevskiy approached him and verbally harassed him in an attempt to get him to drop this lawsuit as against Galuzevskiy.  Because verbal harassment is not actionable under § 1983, plaintiff's harassment claim must be dismissed.

As an initial matter, as of the dates that plaintiff claims the verbal harassment took place, plaintiff had not yet named Officer Galuzevskiy as a defendant in this case.  56.1 ¶¶ 30, 34, 37.  The entire premise of plaintiff's harassment claim – that the threats were in retaliation for plaintiff suing Officer Galuzevskiy – is therefore faulty.  Even if it were not, however, courts in the Second Circuit are clear that verbal harassment is not actionable under § 1983.  Rivera v. Goord, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) ("To the extent that the amended complaint can be read to assert an Eighth Amendment cruel and unusual punishment claim against any Correctional Defendant based on alleged verbal harassment of plaintiff, such conduct is not actionable under § 1983."); see also Bacon v. Evans, No. 20-CV-6337 (KMK), 2021 U.S. Dist. LEXIS 231335, at *9 (S.D.N.Y. Dec. 1, 2021); Cole v. Fischer, 379 Fed. App'x 40, 43 (2d Cir. 2010) (summary order) ("[V]erbal harassment, standing alone, does not amount to a constitutional violation.").

19

Plaintiff accuses Officer Galuzevskiy of nothing more than verbal harassment – if his statements can even be construed as that. On December 4, Officer Galuzevskiy asked only if plaintiff was suing him, for example, and did not make any threats or say anything else. 56.1 ¶¶ 29, 31. On December 15, Officer Galuzevskiy stated that plaintiff would be deadlocked in his cell if he did not drop the lawsuit. 56.1 ¶ 32. And on December 18, 2020, Officer Galuzevskiy said only "while I'm here, you stay in your cell." 56.1 ¶ 35. He said nothing else to plaintiff and did not make any threats. 56.1 ¶ 36.

To the extent that Officer Galuzevskiy's statements can even be read as threats, which is questionable, they were verbal statements only. Plaintiff does not allege, and there is no evidence in the record supporting, that Officer Galuzevskiy took any concrete action against plaintiff at any time. Furthermore, the premise of plaintiff's claims of harassment is faulty; all of the statements about which plaintiff complains involve "threats" to "drop the lawsuit," however Officer Galuzevskiy was not even a named defendant at the time these incidents took place. Plaintiff's harassment claim must therefore fail.

## POINT VII

### PLAINTIFF'S STATE LAW CLAIMS FAIL BECAUSE HE DID NOT FILE A NOTICE OF CLAIM

Plaintiff did not timely file a notice of claim in this case, as required by G.M.L. § 50-k(6); indeed, he did not file a notice of claim at all. Any state law claims that can be inferred plaintiff's SAC, such as, for example, his harassment claim and his assault and battery claim, must therefore fail.

"Under New York law [G.M.L. § 50-e(1)(a)], a plaintiff asserting tort claims against the City or its employees must file a notice of claim within ninety days after the incident giving rise to the claim and commence the action within a year and ninety days from the date of

the incident.  Although these notice of claim requirements do not apply to § 1983 claims brought in federal court, they do otherwise apply to state law claims that are brought in federal court as related to § 1983 claims, including state constitutional claims.  At the pleading stage, plaintiffs must affirmatively plead compliance with the notice-of-claim requirement.  Notice of claim requirements are construed strictly by New York State courts, and failure to abide by their terms mandates dismissal of the action for lack of subject matter jurisdiction." Rivera v. City of N.Y., 1:20-cv-9968-GHW, 2022 U.S. Dist. LEXIS 87083, at * 8-9 (S.D.N.Y. May 13, 2022) (internal citations and quotations omitted).

Because plaintiff has failed to file a notice of claim, therefore, any state law claims that can be read into the complaint must all be dismissed.

## POINT VIII

### PLAINTIFF FAILS TO PROVE A MONELL CLAIM

Plaintiff makes a conclusory Monell claim that the City of New York failed to adequately train its staff to know of "plaintiffs [sic] medical diagnoses…implemented by Correctional Health Services doctors."  56.1 ¶ 3.  This claim must fail, for several reasons.

First, the Second Circuit has held that "[t]he mere assertion . . . that a municipality has…a custom or policy is insufficient in the absence of allegations of fact tending to support at least circumstantially, such an inference.  Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury" Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993).  Plaintiff's failure to train claim is just such a "simple recitation"; there is no evidence in the record of any such failure.

Furthermore, as evidence of a "failure to train," plaintiff points <u>only</u> to his own case, complaining only that the City of New York failed to adequately train it's staff "of the plaintiffs [sic] medical diagnoses and security considerations." 56.1 ¶ 3. But "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>…." <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985); <u>see also</u> <u>Hayes v. Perotta</u>, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010) (A "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government].").

In addition, for the reasons discussed in Points II-V <u>supra</u>, plaintiff has failed to show any constitutional violation against him. Where a plaintiff has failed to establish a violation of his constitutional rights, there is no basis for a claim of municipal liability. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be <u>Monell</u> liability); <u>Martinez v. City of N.Y.</u>, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), <u>aff'd</u> <u>Martinez v. Muentes</u>, 340 Fed. Appx. 700 (2d Cir. July 27, 2009). For all of these reasons, therefore, plaintiff's <u>Monell</u> claim must fail.

## POINT IX

### THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Because there is no case law directly on point stating either 1) that a delay in obtaining medical care for an inmate is unconstitutional where conditions did not pose an unreasonable risk of serious damage to that inmate's health, <u>Charles Pateman v. The City Of White Plains, et al.</u>, No. 17-CV-6156 (KMK), 2020 U.S. Dist. LEXIS 48191, at *20 (S.D.N.Y. Mar. 25, 2020); or 2) that ordering an inmate into a dirty cell that did not pose an excessive risk

to his health and safety is unconstitutional; or 3) that using a water-based fire extinguisher to put out a fire in an inmate's cell while the inmate is in the cell is unconstitutional, at a minimum, the individual officers here would be entitled to qualified immunity on plaintiff's deliberate indifference/denial of medical care claim and his deliberate indifference to conditions of confinement claim.   Reasonable officers could differ on the reasonableness of any of those actions.

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."   Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).   "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."   Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. Aug. 28, 2013) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133-34 (2d Cir. 2010)).

For a right to be "clearly established", there must be at least one identified case "where an officer acting under similar circumstances…was held to have violated the Fourth Amendment."   White v. Pauly, 580 U.S. 73, 79 (2017).   The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.   Hunter v.

Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)).

Because there is no case law directly on point stating that a delay in obtaining medical care for an inmate is unconstitutional where conditions do not pose an unreasonable risk of serious damage to his health; nor stating that ordering an inmate into a cell that, although possibly dirty, did not pose an excessive risk to his health and safety; nor stating that using a water-based fire extinguisher to put out a fire in an inmate's cell with the inmate inside of the cell, is unconstitutional, reasonable officers could have disagreed on the reasonableness of any of those actions.  The officers here are therefore entitled to qualified immunity.

## POINT X

### PLAINTIFF'S FAILURE TO INTERVENE CLAIM MUST FAIL BECAUSE THERE WAS NO CONSTITUTIONAL VIOLATION

Plaintiff brings an explicit failure to intervene claim against Officers Ferraro, Galuzevskiy and Williams, and an arguable failure to intervene claim against Captain Moise as well. Because there was no constitutional violation here, however, all of these claims must fail.

"A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).  An officer who fails to intercede may be liable for preventable harm caused by the actions of other officers if he or she observes or has reason to know that those other officers violated someone's constitutional rights.  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  Liability, however, may only attach when, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the

officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

Importantly, however, there can be no failure to intervene claim where there was no constitutional violation. Feinberg v. City of New York, 99 CV 12127 (RCC), 2004 U.S. Dist. LEXIS 16098 at *12-14 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.") (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)); accord Foy v. City of New York, 03 Civ. 7318 (HB), 2004 U.S. Dist. LEXIS 18274 at *10 (S.D.N.Y. Sep. 10, 2004). Because, for the reasons outlined in Points II-V above, there was no constitutional violation here, there was no commensurate failure to intervene, either. Plaintiff's failure to intervene claim must therefore fail.

## POINT XI

### PLAINTIFF'S SUPERVISORY LIABILITY CLAIM AGAINST CAPTAIN MOISE FAILS

Plaintiff does not argue that Captain Moise himself in any way directly violated his constitutional rights. But after the Second Circuit's decision in Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti, 983 F.3d at 612, quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "[T]here is no special rule for supervisory liability." Id. at 618. "The violation must be established against the supervisory official directly." Id.

Here, plaintiff has failed to argue, let alone establish, that Captain Moise violated his constitutional rights in any way himself. See generally 56.1 statement. Instead, he has brought suit against Captain Moise on the basis of supervisory liability. 56.1 ¶ 2(g). Because the only claim against Captain Moise sounds in supervisory liability, and since there is no longer

a "special rule for supervisory liability," Tangreti, 983 F.3d at 618, plaintiff's claim against Captain Moise must be dismissed.

**POINT XII**

**OFFICER FERRARO HAD NO PERSONAL INVOLVEMENT IN ANY CONSTITUTIONAL VIOLATION AND MUST THEREFORE BE DISMISSED FROM THE CASE**

Officer Ferraro was instructed to leave the scene once the ESU Captain Moise and Officers Williams, Lewis and Galuzevskiy arrived on scene, and Officer Ferraro did so. 56.1 ¶ 15. Plaintiff does not even claim that any unconstitutional acts took place before Officer Ferraro's departure. Officer Ferraro could therefore not possibly have committed any constitutional violations, nor was he present to witness any. As a result, plaintiff's claims against Officer Ferraro must fail.

It is well-settled in this Circuit that the personal involvement of defendants in a constitutional violation is a prerequisite to an award of damages under § 1983. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Furthermore, a defendant in a § 1983 action may not be held liable merely because he holds a high position of authority. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Instead, "each Government official . . . is only liable for his . . . own misconduct." Iqbal, 556 U.S. at 677.

Here, plaintiff has offered no evidence showing that Officer Ferraro was involved in any constitutional violation. Indeed, the evidence shows that Officer Ferraro was told to leave the scene by Captain Moise, and did so. 56.1 ¶ 15. "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or

26

injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (quotation marks and citations omitted).  For these reasons, therefore, Officer Ferraro must be dismissed from the case.

## CONCLUSION

For all of the above reasons, therefore, plaintiff's § 1983 claims against the individual officers, his state-law claims against the individual officers and the City, and his Monell claim against the City, must all fail, and summary judgment must be granted to defendants in its entirety.

DATED:       New York, New York
             December 29, 2022


                              HON. SYLVIA O. HINDS-RADIX
                              Corporation Counsel of the
                                City of New York
                              *Attorney for Defendants City of New York, Moise,*
                              *Galuzevskiy, Williams, Ferraro, and Gibson*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-5055
                              kweall@law.nyc.gov


                              By:    /s/  *Katherine J. Weall*
                                     _____
                                     Katherine J. Weall