UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

PETER RODRIGUEZ,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK, E.S.U. CAPTAIN
MOISE #1451, E.S.U. OFFICER GALUZEVSKIY
#8957, E.S.U. OFFICER TEMIR WILLIAMS
#11475, CORRECTION OFFICER FERRARO
#1805, CAPTAIN GIBSON,

                                        Defendants.

---

20 Civ. 9840 (JHR) (BCM)

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Daniel Slifkin
Noah Rothman
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for Plaintiff Peter Rodriguez*

June 9, 2025

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................4

    A.    The Unprovoked Assault of Peter Rodriguez. .............................................4

    B.    Mr. Rodriguez Experiences Long-Lasting Injuries As a Result of Defendants' Assault. ................................................................................7

    C.    After Being Told That His Claims Could Not Be Resolved Through the Grievance Process, Mr. Rodriguez Brings This Action. ..............................................................................................8

    D.    Officer Galuzevskiy Threatens Mr. Rodriguez to Drop His Lawsuit or Face Retaliation. ................................................................9

LEGAL STANDARD..............................................................................................10

ARGUMENT .........................................................................................................11

I.    THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO WHETHER OFFICERS WILLIAMS AND GALUZEVSKIY USED EXCESSIVE FORCE AGAINST MR. RODRIGUEZ. ......................................11

    A.    A Reasonable Jury Could Find That Defendants' Unjustified Use of OC Spray and a Fire Extinguisher on Mr. Rodriguez Violated the Constitution. ........................................................................11

    B.    Defendants Are Not Entitled to Qualified Immunity................................18

II.    THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO WHETHER CAPTAIN MOISE'S FAILURE TO INTERVENE VIOLATED MR. RODRIGUEZ'S CONSTITUTIONAL RIGHTS. ...................21

III.    THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO WHETHER OFFICER GALUZEVSKIY RETALIATED AGAINST MR. RODRIGUEZ FOR FILING THIS LAWSUIT. ...........................................22

CONCLUSION.....................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) .................................11

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)...............................................................21

*Bove v. City of New York*, No. 98 Civ. 8800 (HB), 1999 WL 595620
  (S.D.N.Y. Aug. 6, 1999) ...........................................................................................16

*Colson v. Mingo*, No. 18 Civ. 2765, 2024 WL 1018582 (S.D.N.Y. Mar. 8,
  2024) ...........................................................................................................................15

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) ................................................................11

*DeArmas v. Jaycox*, No. 92 Civ. 6139 (LMM), 1993 WL 37501 (S.D.N.Y.
  Feb. 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993).......................................................16

*Elder v. McCarthy*, 967 F.3d 113 (2d Cir. 2020)..............................................................20

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ................................................................23

*Ford v. Palmer*, 539 F. App'x 5 (2d Cir. 2013)................................................................25

*Frost v. N.Y.C. Police Dep't*, 980 F.3d 231 (2d Cir. 2020) .......................................11, 19

*Garcia v. Anderson*, No. 9:21 Civ. 0814 (GTS) (ML), 2023 WL 10365100
  (N.D.N.Y. Nov. 13, 2023), *adopted by*, 2024 WL 446030 (N.D.N.Y.
  Feb. 6, 2024) ..............................................................................................................19

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004)..............................................................22

*Graham v. Connor*, 490 U.S. 386 (1989) .........................................................................11

*Hepworth v. Suffolk Cnty.*, No. 2:02 Civ. 6473 (ENV) (ETB), 2006 WL
  2844408 (E.D.N.Y. Sept. 29, 2006)...........................................................................24

*In re State Police Litig.*, 88 F.3d 111 (2d Cir. 1996) ........................................................18

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501 (S.D.N.Y. 2008), *aff'd*,
  461 F. App'x 18 (2d Cir. 2012) .................................................................................21

*Jones v. Bock*, 549 U.S. 199 (2007)..................................................................................17

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015).................................................................11

*Lewis v. Clarkstown Police Dep't*, No. 11 Civ. 2487 (ER), 2014 WL
1364934 (S.D.N.Y. Mar. 31, 2014), *adhered to on reconsideration*,
2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014) ....................................12, 20

*Luna v. Pico*, 356 F.3d 481 (2d Cir. 2004) ........................................................18

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) ......................10

*Mateo v. Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865 (S.D.N.Y.
July 16, 2013) ................................................................................................23

*McCardle v. Haddad*, 131 F.3d 43 (2d Cir. 1997) ...........................................18

*Murray v. Orange Cnty.*, No. 18 Civ. 634 (VB), 2019 WL 3765770
(S.D.N.Y. Aug. 9, 2019) ........................................................................23, 24

*Perkins v. Perez*, No. 17 Civ. 1341 (KMK), 2019 WL 1244495 (S.D.N.Y.
Mar. 18, 2019) ..............................................................................................25

*Quezada v. Roy*, No. 14 Civ. 4056 (CM), 2015 WL 5970355 (S.D.N.Y.
Oct. 13, 2015) ...............................................................................................23

*Robison v. Via*, 821 F.2d 913 (2d Cir. 1987) ...................................................15

*Rodriguez v. City of New York*, No. 14 Civ. 8647 (PGG) (FM), 2016 WL
11483837 (S.D.N.Y. Aug. 2, 2016), *adopted by*, 2016 WL 5476003
(S.D.N.Y. Sept. 29, 2016) .............................................................................19

*Rodriguez v. City of New York*, No. 14 Civ. 8647 (PGG) (FM), 2016 WL
5476003 (S.D.N.Y. Sept. 29, 2016) ..............................................................20

*Ross v. Willis*, No. 16 Civ. 6704 (PAE) (KNF), 2021 WL 3500163
(S.D.N.Y. Aug. 9, 2021) .............................................................12, 15, 20, 22

*Santos v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 8790 (GBD) (THK), 2010
WL 1142066 (S.D.N.Y. Feb. 25, 2010), *adopted by*, 2010 WL
1142065 (S.D.N.Y. Mar. 25, 2010) .........................................................13, 17

*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014) ...........................................21

*Toliver v. N.Y.C. Dep't of Corr.*, 202 F. Supp. 3d 328 (S.D.N.Y. 2016)...............12, 15, 17

*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010) ...................................... passim

*United States v. Rem*, 38 F.3d 634 (2d Cir. 1994) ...........................................10

*Vatansever v. City of New York*, No. 01 Civ. 11621 (WHP), 2005 WL
2396904 (S.D.N.Y. Sept. 28, 2005), *aff'd*, 210 F. App'x 26 (2d Cir.
2006) ..............................................................................................................16

iii

*Vincent v. Sitnewski*, 117 F. Supp. 3d 329 (S.D.N.Y. 2015) .........................................22, 25

*White v. Westchester Cnty.*, No. 18 Civ. 730 (KMK), 2018 WL 6726555
    (S.D.N.Y. Dec. 21, 2018).........................................................................................23, 25

*Wiggan v. N.Y.C. Dep't of Corr.*, No. 12 Civ. 1405 (GBD) (HBP), 2014
    WL 4631456 (S.D.N.Y. Sept. 16, 2014)........................................................................20

## Statutes & Rules

42 U.S.C. § 1983................................................................................................1, 2, 9, 23

Fed. R. Civ. P. 56....................................................................................................10

N.Y. Comp. Codes R. & Regs. tit. 9, § 7063.4 ................................................................7

Plaintiff Peter Rodriguez respectfully submits this memorandum in opposition to Defendants' Motion for Summary Judgment (the "MSJ," ECF No. 146).

## PRELIMINARY STATEMENT

Inmates held in pretrial detention are protected by a fundamental constitutional principle. Because they have not been convicted of any crime, although they may be temporarily incarcerated, they cannot be *punished*. In other words, prison officials cannot take action against them if that action lacks a genuine penological purpose. Needless force is punitive force, and it violates the Constitution.

This case concerns a pretrial detainee named Peter Rodriguez. On August 31, 2020, Peter Rodriguez was assaulted in his cell by correctional officers. Mr. Rodriguez was not assaulted because he refused to follow orders or heed officers' warnings. He was not assaulted because he was out of control or posed a danger to others. Just the opposite. He was not warned at all, and he did not disobey any order. He was totally compliant and did not pose any threat. He was assaulted, in Defendants' own words, for "setting a fire in his cell." (MSJ at 1.) To put it simply, he was unconstitutionally punished.

In the aftermath of the events of August 31, 2020, Mr. Rodriguez brought this action to vindicate his constitutional rights. At the heart of his suit are three § 1983 claims. *First*, Mr. Rodriguez alleges that an assault on his person violated his Fourteenth Amendment right to be free from excessive force. *Second*, he alleges that the prison captain on the scene could have prevented that unjustified assault, but chose not to, despite the captain's constitutional duty to intervene. *Third*, he alleges that the intimidation tactics of one of his assailants—who repeatedly threatened Mr. Rodriguez in

the hopes that he would drop this lawsuit—infringed on his First Amendment right to seek judicial redress.

Defendants now ask this Court to dispose of this case on summary judgment. But Mr. Rodriguez's core claims cannot be resolved without a trial. As an initial matter, the usual procedural bars are not an impediment here. Defendants do not argue that Mr. Rodriguez was obligated to exhaust his administrative remedies before pursuing his excessive force, failure to intervene and First Amendment retaliation claims. The Prison Litigation Reform Act is therefore no barrier to relief. Similarly, Defendants raise only the most limited qualified immunity defense with respect to Mr. Rodriguez's allegations. They do not deny that the unprovoked use of pepper spray, failure to prevent an unconstitutional assault, and retaliation for filing a § 1983 suit all violate clearly established law.

Instead, Defendants argue, on the merits, that the undisputed facts are sufficient to warrant judgment as a matter of law. That is plainly not so. To be sure, certain facts are undisputed:

### **Material Undisputed Facts**

- Correctional officers responded to a fire in Mr. Rodriguez's cell on the evening of August 31, 2020. (Defs.' Local Rule 56.1 Statement of Undisputed Facts ("DSOF"), ECF No. 144 at ¶¶ 6, 12-13.)

- Officer Aleksandr Galuzevskiy sprayed Mr. Rodriguez with a fire extinguisher. (DSOF ¶ 18.)

- Officers Damien Lewis and Temir Williams pepper sprayed Mr. Rodriguez in the face—despite the fact that the Department of Correction knew Mr. Rodriguez was asthmatic and had determined that pepper spray "may not be used" against him. (DSOF ¶ 19, Pl.'s Local Rule 56.1 Statement of Additional Relevant Facts ("PSOF"), at ¶¶ 18, 40-42.)

- Captain Bonar Moise was present at Mr. Rodriguez's cell but did not intervene to prevent the use of force. (DSOF ¶¶ 15-19; PSOF ¶¶ 13-18.)

- Officer Galuzevskiy confronted Mr. Rodriguez about his lawsuit three times after the complaint was filed.  (DSOF ¶¶ 29-36.)

- Mr. Rodriguez alleged serious physical and psychological harm stemming from the assault, and on December 19, 2020, Mr. Rodriguez attempted suicide in his cell.  (DSOF ¶ 25; PSOF ¶¶ 47-48.)

        However, the most significant facts—the facts that will decide this case—

are *hotly* disputed:

## **Material Disputed Facts**

*Why Mr. Rodriguez Was Sprayed With the Fire Extinguisher*

- Defendants contend that Officer Galuzevskiy deployed the fire extinguisher to put out the fire in Mr. Rodriguez's cell.  (MSJ at 2.)

- Mr. Rodriguez testified that there was no active fire by the time Defendants entered his cell—meaning that Mr. Rodriguez was sprayed for no legitimate reason.  (PSOF ¶¶ 7, 11.)

*Why Mr. Rodriguez Was Pepper Sprayed*

- Defendants contend that officers pepper sprayed Mr. Rodriguez because they perceived "an imminent threat to their safety."  (MSJ at 2.)

- Mr. Rodriguez testified that he had his arms raised in a "surrender" position, and he posed no threat whatsoever—meaning that Mr. Rodriguez was pepper sprayed for no legitimate reason.  (PSOF ¶¶ 14-18.)

*What Injuries Mr. Rodriguez Suffered*

- Defendants contend that Mr. Rodriguez suffered "*de minimis*" harm from Defendants' assault because his medical record from August 31, 2020 reflected "no visible injuries."  (MSJ at 2, 15.)

- Mr. Rodriguez testified that he declined examination and treatment at the prison clinic because Defendants threatened that his personal property would not be returned to his cell unless he refused treatment.  In fact, the assault caused long-lasting harm to Mr. Rodriguez's vision, breathing, and mental health.  (PSOF ¶¶ 30-34, 40-48.)

        This case has numerous disputes of material fact, and those disputes

preclude summary judgment.  The outcome here will turn on whether Defendants' use of

force against Mr. Rodriguez was necessary to restore order (as Defendants maintain) or

3

purely gratuitous (as Mr. Rodriguez alleges).  That factual determination belongs to a jury.  Accordingly, for the reasons set forth below, Mr. Rodriguez respectfully asks this Court to deny Defendants' MSJ with respect to his excessive force, failure to intervene, and First Amendment retaliation claims.

## STATEMENT OF FACTS

### A.    The Unprovoked Assault of Peter Rodriguez.

On the evening of August 31, 2020, Mr. Peter Rodriguez was in pretrial custody at the Manhattan Detention Complex ("MDC") in downtown Manhattan.  (DSOF ¶ 6; PSOF ¶ 1.)  Mr. Rodriguez was alone, and he was locked in his cell.  (DSOF ¶¶ 10-11.)  MDC correctional officers had taken all of Mr. Rodriguez's personal property from his cell that morning, leaving only a mattress.  (PSOF ¶ 2.)

Shortly after 6:00 p.m., a fire started in Mr. Rodriguez's near-empty cell.  (DSOF ¶ 12; PSOF ¶ 3.)  Approximately five officers and two captains responded to the fire.  (PSOF ¶ 4.)  Four Defendants were among those first on the scene: Correctional Officer Peter Ferraro, Correctional Officer Aleksandr Galuzevskiy, Correctional Officer Temir Williams, and Captain Bonar Moise.  (PSOF ¶ 5.)  Correctional Officer Damien Lewis, a non-Defendant, also responded.  (*Id.*)

Officer Ferraro arrived carrying a fire extinguisher.  (DSOF ¶ 14; PSOF ¶ 6.)  Officer Ferraro sprayed the fire extinguisher through the food slot in Mr. Rodriguez's cell door, extinguishing the fire.  (PSOF ¶ 7.)  After he had done so, Captain Moise told Officer Ferraro to leave and stated that the remaining officers would "take care of" Mr. Rodriguez without him.  (DSOF ¶ 15; PSOF ¶ 8.)  Officer Ferraro complied with Captain Moise's order, handed the fire extinguisher to Officer Galuzevskiy, and exited the area.  (PSOF ¶ 9.)

4

After Officer Ferraro departed, the officers opened the door to Mr. Rodriguez's cell.  (DSOF ¶ 17; PSOF ¶ 10.)  At that time, the fire was no longer burning, but there was still smoke inside.  (PSOF ¶ 11.)  Despite the smoke, there was a clear line of sight between Defendants and Mr. Rodriguez.  (PSOF ¶ 12.)

Upon opening the cell door, and without saying anything to Mr. Rodriguez, Officer Galuzevskiy sprayed Mr. Rodriguez in the face with the fire extinguisher.  (DSOF ¶¶ 17-18; PSOF ¶ 13.)  As he was being sprayed, Mr. Rodriguez pleaded with Officer Galuzevskiy to stop and raised his hands in the air in a "surrender" position with his palms facing out.  (PSOF ¶ 14.)  None of the Defendants made any effort to stop Officer Galuzevskiy.  (PSOF ¶ 15.)

Still in "surrender mode" and seeking relief from the smoke in his cell, Mr. Rodriguez stepped toward the open cell door.  (PSOF ¶ 16.)  Without issuing any warning or saying anything to Mr. Rodriguez, Officer Galuzevskiy told Officer Williams to "get him."  (PSOF ¶ 17.)  Officers Williams and Lewis each simultaneously sprayed Mr. Rodriguez in the face with their OC (pepper) spray.  (DSOF ¶ 19; PSOF ¶ 18.)

Immediately after being sprayed, Mr. Rodriguez was commanded to put his hands behind his back so that he could be handcuffed.  (PSOF ¶ 20.)  Mr. Rodriguez complied and was rear cuffed without resistance.  (PSOF ¶¶ 21.)  Defendants escorted Mr. Rodriguez out of the housing area and into the elevator vestibule, where he was left for more than 15 minutes.  (PSOF ¶ 22.)  Mr. Rodriguez's eyes were burning from the pepper spray and the handcuffs were tight around his wrists; he was in significant pain. (PSOF ¶¶ 19, 23.)  When he complained and asked to be taken to the decontamination shower, Mr. Rodriguez was told to "shut up," and Defendants further tightened the cuffs

around his wrists.  (PSOF ¶¶ 24-25.)  After some time, Mr. Rodriguez was led to the

decontamination shower.  (PSOF ¶ 26.)  While he was decontaminating, Mr. Rodriguez

requested medical attention for his injuries.  (PSOF ¶ 27.)  Defendants warned him to

decline medical treatment "or else."  (PSOF ¶ 28.)  Despite his request to be taken to the

MDC medical clinic, Mr. Rodriguez was detained in the decontamination shower for

more than five hours.  (PSOF ¶ 29.)

Eventually, Mr. Rodriguez was led to the clinic by Defendant Captain

Shaday Gibson, the area supervisor.  (DSOF ¶ 21; PSOF ¶ 30.)  As they walked to the

clinic, Mr. Rodriguez was again instructed to refuse treatment.  (PSOF ¶ 31.)

Specifically, Captain Gibson told Mr. Rodriguez that his personal property—which had

been taken from his cell that morning—would not be returned to him unless he kept his

injuries hidden from the medical staff.  (*Id.*)  When Mr. Rodriguez reached the clinic,

Captain Gibson told the medical staff that Mr. Rodriguez did not require treatment.

(PSOF ¶ 32.)  In light of Captain Gibson's threat, and although he was experiencing

significant discomfort, Mr. Rodriguez represented that he had no injuries and refused to

be examined.  (DSOF ¶ 22; PSOF ¶ 33.)  At 11:34 p.m., the doctor indicated in his

medical report that Mr. Rodriguez had "refuse[d] medical services."  (PSOF ¶ 34.)

Mr. Rodriguez was in the clinic for less than five minutes before he was ushered back to

his cell by Captain Gibson.  (PSOF ¶¶ 35-36.)

Upon his return, Mr. Rodriguez found that his cell was filled with water,

smoke, fire debris, and residue from the OC spray.  (PSOF ¶ 37.)  When Mr. Rodriguez

complained to Captain Gibson about the conditions in his living quarters, Captain Gibson

ordered Mr. Rodriguez to step into his cell.  (PSOF ¶ 38.)  Mr. Rodriguez complied with

Captain Gibson's order, and he was locked in his cell for approximately 12 hours before it was cleaned.  (DSOF ¶¶ 26-27; PSOF ¶ 39.)

### B.    Mr. Rodriguez Experiences Long-Lasting Injuries As a Result of Defendants' Assault.

Mr. Rodriguez suffered serious physical and psychological harm as a result of the August 31, 2020 assault.

As reflected in his Department of Correction ("DOC") medical records, Mr. Rodriguez is asthmatic and carries an albuterol rescue inhaler on his person.  (PSOF ¶¶ 40-41.)  Because of his asthma, Mr. Rodriguez "has contraindications for the use of . . . chemical agent"—meaning that "DOC [was] aware" that "OC spray . . . may not be used" on him.  (PSOF ¶ 42.)  A contraindication reflects a determination that the use of chemical agents could aggravate an inmate's existing injuries, illnesses, or other physical conditions.  *Cf.* N.Y. Comp. Codes R. & Regs. tit. 9, § 7063.4(d).  Pursuant to the Department of Correction Directive governing the use of Chemical Agents, DOC officers are not permitted to use chemical agents on an inmate before notifying "facility health services staff to determine from such staff whether there is a medical reason (contraindications) why chemical agents should not be used."  (PSOF ¶ 44.)  Only "[i]n emergency circumstances where a delay in the use of a chemical agent would present an immediate threat of death or serious injury, or would severely threaten the safety or security of the facility," may chemical agents be employed without obtaining "medical clearance."  (*Id.*)  Under all circumstances, chemical agents must be "used with the utmost discretion" and they may never be employed to "punish, discipline, assault, or retaliate against an inmate."  (PSOF ¶ 43.)

7

Defendants nevertheless applied, without warning, two bursts of OC spray directly to Mr. Rodriguez's face, causing severe pain and exacerbating Mr. Rodriguez's asthma. (PSOF ¶¶ 18, 45.)  The pepper spray also caused damage to Mr. Rodriguez's eyes, causing his vision to deteriorate.  (PSOF ¶ 46.)  As a result of the OC spray, Mr. Rodriguez now requires glasses.  (*Id.*)

The assault also had significant consequences for Mr. Rodriguez's mental health.  In the months following Defendants' assault, Mr. Rodriguez experienced debilitating anxiety and depression.  (PSOF ¶ 47.)  To this day, Mr. Rodriguez has difficulty sleeping and suffers from paranoia.  (*Id.*)  On December 19, 2020, Mr. Rodriguez attempted to hang himself in his cell.  (PSOF ¶ 48.)

**C.    After Being Told That His Claims Could Not Be Resolved Through the Grievance Process, Mr. Rodriguez Brings This Action.**

Mr. Rodriguez initially intended to pursue his claims through the DOC grievance process.  But when Mr. Rodriguez received the grievance form from the MDC grievance officer, he was advised that his allegations regarding the use of force by prison staff could not be addressed through a grievance.  (PSOF ¶¶ 49-50.)  This was also confirmed on the face of the grievance form, which listed "Assault Allegation," "Harassment Allegation" and "Staff Complaint" as "categories not subject to the grievance process."  (PSOF ¶ 51.)  Believing that a grievance would be futile, Mr. Rodriguez did not complete or submit any grievance form.  (DSOF ¶ 39.)

Instead, on November 20, 2020, Mr. Rodriguez brought this action in this Court.  The original complaint named as Defendants the City of New York, Captain Gibson, Captain Moise, Officer Ferraro and two Correctional Officers designated as "John Doe."  (ECF No. 2)  "John Doe #1" was identified in the complaint as a "white

male" whose "last name starts with a 'G.'"  (*Id.* at 6.)  "John Doe #2" was identified as a

"tall black male."  (*Id.*)

On December 21, 2020, Mr. Rodriguez filed an amended complaint.

(ECF No. 14.)  The amended complaint named as Defendants the City of New York,

Captain Gibson, Captain Moise, Officer Ferraro, Officer Galuzevskiy (*i.e.*, John Doe #1)

and Officer Williams (*i.e.*, John Doe #2).

On February 9, 2021, Mr. Rodriguez filed the Second Amended

Complaint ("SAC," ECF No. 30), the operative complaint in this action.  Relevant to this

MSJ, the SAC alleges claims under 42 U.S.C. § 1983, including:

> (1) Excessive force in violation of the Fourteenth Amendment, against Officer
> Galuzevskiy and Officer Williams.  (SAC ¶¶ 23, 26.)

> (2) Failure to intervene in violation of the Fourteenth Amendment, against
> Captain Moise.  (SAC ¶¶ 16, 26.)

> (3) First Amendment retaliation, against Officer Galuzevskiy.  (SAC ¶ 23.)

**D.    Officer Galuzevskiy Threatens Mr. Rodriguez to Drop His Lawsuit or
Face Retaliation.**

On December 4, 2020—two weeks after Mr. Rodriguez filed suit—

Officer Galuzevskiy approached Mr. Rodriguez's cell and asked if Mr. Rodriguez was

suing him.  (DSOF ¶ 29; PSOF ¶ 52.)  At the time, Mr. Rodriguez's complaint named as

Defendant a "John Doe" whose "last name starts with a 'G'."  (ECF No. 2 at 6.)  Afraid

of retaliation, Mr. Rodriguez told Officer Galuzevskiy that he was not being sued.

(PSOF ¶ 53.)

On December 15, 2020, Officer Galuzevskiy confronted Mr. Rodriguez in

the shower area.  (DSOF ¶ 32; PSOF ¶ 54.)  Officer Galuzevskiy told Mr. Rodriguez that

if he did not drop his lawsuit he would be "deadlocked" in his cell and not permitted to

leave or access services.  (DSOF ¶ 32; PSOF ¶ 55.)  Mr. Rodriguez was afraid and did not answer.  (PSOF ¶ 56.)

Three days later, on December 18, 2020, Officer Galuzevskiy again approached Mr. Rodriguez's cell, aggressively waved his fist, and yelled:  "When I am here, you stay in your cell."  (DSOF ¶ 35; PSOF ¶ 57.)  Mr. Rodriguez retreated into his cell out of fear.  (PSOF ¶ 58.)  Early the next morning, Mr. Rodriguez attempted suicide by hanging. (PSOF ¶¶ 48, 59.)

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought."  *United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994).  "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment."  *Id.* at 644.  Therefore, a motion for summary judgment should be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## ARGUMENT

I.    THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO WHETHER
      OFFICERS WILLIAMS AND GALUZEVSKIY USED EXCESSIVE FORCE
      AGAINST MR. RODRIGUEZ.

   A.    A Reasonable Jury Could Find That Defendants' Unjustified Use of OC
         Spray and a Fire Extinguisher on Mr. Rodriguez Violated the Constitution.

         A pretrial detainee's right to be free from excessive force is protected by

the Due Process Clause of the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S.

386, 395 n.10 (1989); *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial

detainee's claims are evaluated under the Due Process Clause, because pretrial detainees

have not been convicted of a crime and thus may not be punished in any manner."

(quotation omitted)).  To prove a constitutional violation, "a pretrial detainee must show

only that the force purposely or knowingly used against him was objectively

unreasonable," *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015), meaning that it

was "not rationally related to a legitimate nonpunitive governmental purpose" or was

"excessive in relation to that purpose," *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 252

(2d Cir. 2020).  "Given the fact-specific nature of the inquiry," excessive force claims

should not be dismissed on summary judgment unless no reasonable jury could find that

the defendant's conduct was unreasonable.  *Amnesty Am. v. Town of W. Hartford*, 361

F.3d 113, 123 (2d Cir. 2004).  Furthermore, under all circumstances, "our caselaw makes

clear that it is unconstitutional for officers to strike an individual who is compliant and

does not pose an imminent risk of harm to others."  *Frost*, 980 F.3d at 254.

         Mr. Rodriguez's excessive force claim is not ripe for summary judgment

because a reasonable jury could readily find that Defendants' use of force was objectively

unreasonable and therefore unconstitutional.  Although Defendants assert that "any force

used against him was incidental and/or reasonable" (MSJ at 1), that unsupported assertion is subject to a genuine dispute that cannot be resolved before trial. At his deposition, Mr. Rodriguez testified that, upon Defendants' entry into his cell, he raised his arms in the air with his palms facing out, indicating surrender. (PSOF ¶ 14.) Mr. Rodriguez further testified that he was totally compliant and did not disobey any order or interfere with Defendants in any way. (PSOF ¶ 16.) In fact, Mr. Rodriguez testified that Defendants did not issue any orders or warnings whatsoever before resorting to force. (PSOF ¶ 18.) Despite Mr. Rodriguez's complete lack of resistance, he was sprayed in the face with a fire extinguisher and two cans of OC spray, causing serious injury. (PSOF ¶¶ 13-19, 40-48.)

Accordingly, Mr. Rodriguez has presented evidence showing that Defendants' use of force was gratuitous and served no legitimate penological purpose. That theory of liability has consistently supported excessive force claims in this Circuit. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 98-99 (2d Cir. 2010) (denying summary judgment because a jury could find that pepper spraying an unresisting arrestee was an unreasonable use of force); *Ross v. Willis*, No. 16 Civ. 6704 (PAE) (KNF), 2021 WL 3500163, at *11-13 (S.D.N.Y. Aug. 9, 2021) (denying summary judgment because it was undisputed that Plaintiff was pepper sprayed and the jury could choose to discredit the Defendant's "uncorroborated" allegation that Plaintiff resisted); *Toliver v. N.Y.C. Dep't of Corr.*, 202 F. Supp. 3d 328, 335 (S.D.N.Y. 2016) (upholding jury verdict because the jury could reasonably have concluded that the use of pepper spray against a non-threatening inmate was excessive); *Lewis v. Clarkstown Police Dep't*, No. 11 Civ. 2487 (ER), 2014 WL 1364934, at *4 (S.D.N.Y. Mar. 31, 2014), *adhered to on*

12

*reconsideration*, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014) (denying summary judgment because there were factual disputes regarding the necessity of Defendants' use of chemical spray); *see also Santos v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 8790 (GBD) (THK), 2010 WL 1142066, at *7-8 (S.D.N.Y. Feb. 25, 2010), *adopted by*, 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010) (denying motion to dismiss where Defendant allegedly sprayed Plaintiff with a fire extinguisher for "[n]o legitimate penological purpose").  Crediting Mr. Rodriguez's version of the events as true—which this Court must do at this stage, *Tracy*, 623 F.3d at 98—a reasonable jury could find that Defendants' use of force against an unresisting and medically vulnerable inmate was objectively unreasonable.

Defendants nevertheless seek summary judgment on two bases.  First, Defendants insist that Mr. Rodriguez "cannot prevail" on his excessive force claim because "any harm to him was *de minimis*," as demonstrated by "his medical records . . . on the day of the August 31, 2020 incident."  (MSJ at 15.)  Second, Defendants argue that Mr. Rodriguez cannot recover for any harm inflicted by the fire extinguisher because "no reasonable jury could consider the use of a fire extinguisher . . . to be excessive under the circumstances where it was necessary to put out a fire."  (*Id.* at 16.)  Neither argument has merit.

First, Defendants' argument that Mr. Rodriguez suffered insufficient harm to support his excessive force claim cannot provide a basis for summary judgment because the record reflects a significant dispute regarding the severity of Mr. Rodriguez's injuries.  Defendants acknowledge that Mr. Rodriguez alleges substantial harm resulting from the assault, including "anxiety," "depression," "numbness," "pain," "agitation of

13

[his] asthma," and "reduced vision." (*Id.*)  Notwithstanding those allegations, Defendants

rely on Mr. Rodriguez's medical records from the day of the incident to argue that he

suffered "no injuries other than 'mild shortness of breath.'" (*Id.* at 15.)

That is wrong.  As an initial matter, Mr. Rodriguez's medical records from

August 31, 2020 do not contradict his allegations.  It is undisputed that Mr. Rodriguez

was never properly examined at the clinic because he "refuse[d] medical services" at the

outset and was discharged in minutes.  (PSOF ¶¶ 34-35.)  That refusal explains why

Mr. Rodriguez's injury report did not suggest the harms complained of in this action.

Defendants point out that "[m]edical personnel noted their observation that plaintiff had

no visible injuries" (MSJ at 2), but chest pain, psychological distress, and vision

problems are *not* "visible injuries."  Without a proper medical examination,

Mr. Rodriguez's injuries necessarily went undetected and unreported.

Moreover, Defendants' argument ignores Mr. Rodriguez's sworn

testimony that he did not report his injuries to the medical staff *because he was*

*threatened by Defendants*.  Mr. Rodriguez testified that Captain Gibson told him to

decline treatment at the clinic or his personal property would not be returned to his cell.

(PSOF ¶ 31.)  Because of that threat, Mr. Rodriguez denied his injuries and refused

examination—even though he experienced serious adverse effects from the assault.

(PSOF ¶¶ 33-34; 40-48.)  At trial, Defendants may dispute Mr. Rodriguez's explanation

for why he refused treatment, but this is exactly the sort of factual question that that this

Court cannot resolve on summary judgment.

Defendants' contention that Mr. Rodriguez suffered no appreciable harm

from the assault is also belied by other evidence in the record.  With respect to

14

Mr. Rodriguez's allegations regarding his mental health, MDC records show that Mr. Rodriguez suffered from depression and even attempted suicide not long after Defendants violated his constitutional rights.  (PSOF ¶ 48.)  Medical records also show that Mr. Rodriguez was prescribed glasses after Defendants pepper sprayed him in the eyes, when he had never needed them before.  (PSOF ¶ 46.)  Far from contradicting his allegations, the record evidence corroborates Mr. Rodriguez's testimony.

Even if there were no factual dispute, Defendants' "*de minimis*" defense fails as a matter of law.  Courts in this Circuit reject the notion that chemical spray causes insufficient harm to support an excessive force claim.  "[T]here is a substantial body of case law documenting that exposure to pepper spray causes a variety of incapacitating and painful effects such that exposure to such chemical constitutes more than a de minimis use of physical force."  *Colson v. Mingo*, No. 18 Civ. 2765 (JGLC), 2024 WL 1018582, at *19 (S.D.N.Y. Mar. 8, 2024) (quotation omitted); *Toliver*, 202 F. Supp. 3d at 335 ("As the Second Circuit has recognized, 'infliction of pepper spray . . . constitutes a significant degree of force.'" (quoting *Tracy*, 623 F.3d at 98)).  It makes no difference that the harm caused by chemical spray may be short-lived.  After all, "if injuries of limited duration were enough to defeat an excessive force claim, police and corrections officers would essentially be able to utilize pepper spray and similar chemical agents with impunity."  *Ross*, 2021 WL 3500163, at *12 (quotation omitted).  To avoid that result, the Second Circuit has long held that a plaintiff may recover where the force used against them was "unreasonable and excessive," "even if the injuries inflicted were not permanent or severe."  *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987); *see also Ross*,

2021 WL 3500163, at *12 ("[A] plaintiff need not have sought medical attention to support an excessive force claim.").

Thus, even if Mr. Rodriguez's August 31, 2020 medical report accurately reflected his injuries five hours after the assault, Defendants' contention that the OC spray inflicted only "*de minimis*" harm could not form the basis for summary judgment. Defendants cite no case where an officer's use of chemical spray was deemed insufficiently serious to support an excessive force claim. Rather, Defendants' cases all involve allegations of physical assault where the inmate's medical records indicated that the complained-of use of force did not occur at all. (*See* MSJ at 15-16); *see, e.g.*, *DeArmas v. Jaycox*, No. 92 Civ. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) ("Plaintiff's medical records raise questions concerning the credibility of Plaintiff's allegations."); *Vatansever v. City of New York*, No. 01 Civ. 11621 (WHP), 2005 WL 2396904, at *3 (S.D.N.Y. Sept. 28, 2005), *aff'd*, 210 F. App'x 26 (2d Cir. 2006) ("[T]he overwhelming evidence of Vatansever's medical records belies his unsupported assertions that the assault occurred, or that it was as brutal as he describes it to be."); *Bove v. City of New York*, No. 98 Civ. 8800 (HB), 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (granting summary judgment despite "the plaintiff's allegations of a brutal beating" because the hospital records and other evidence supported "defendants' view that no such incident took place"). Those cases are not relevant here, where the facts of the assault on Mr. Rodriguez are undisputed. And they are particularly inapt because they do not involve situations where the injured inmate refused medical examination altogether, due to Defendants' alleged threats. *See, e.g.*, *Bove*, 1999 WL 595620, at *6 (describing "extensive examination" that found minimal

injuries).  Although the extent of Mr. Rodriguez's injuries will determine the damages he

can recover, Defendants' unreasonable use of force was "sufficiently serious by objective

standards" to violate the Constitution.  *See Toliver*, 202 F. Supp. 3d at 335.

Second, Defendants further assert that summary judgment should issue

because "no reasonable jury could consider [Officer Galuzevskiy's] use of a fire

extinguisher  . . . to be excessive."  (MSJ at 16.)  Again, Defendants' argument ignores a

genuine dispute of material fact that precludes summary judgment.  Defendants

differentiate between two categories of cases involving the use of a fire extinguisher—

cases where the fire extinguisher "was necessary to put out a fire" and cases where there

"was no need for a fire extinguisher to be deployed."  (*Id.*)  Defendants contend that

summary judgment is appropriate here because "Officer Galuzevskiy had a legitimate

penological interest in using the fire extinguisher—to put out the fire in plaintiff's cell."

(*Id.* at 16-17.)  But Mr. Rodriguez testified precisely the opposite.  At his deposition,

Mr. Rodriguez explained that the fire had ceased burning by the time that Defendants

opened the door to his cell.  (PSOF ¶ 11.)  Accordingly, there was no reason whatsoever

for Officer Galuzevskiy to spray Mr. Rodriguez.  As in *Santos*, the case Defendants cite,

Mr. Rodriguez's claim cannot be dismissed because "there was no fire to be

extinguished" and the use of force was therefore "by definition wanton and

unconstitutional."  *Santos*, 2010 WL 1142066, at *7-9; (MSJ at 16).

Finally, Defendants do not raise any exhaustion argument with respect to

Mr. Rodriguez's excessive force claim.  (See MSJ at 8 (limiting exhaustion argument to

Mr. Rodriguez's "deliberate indifference to medical care and conditions of confinement

claims").)  Therefore, that defense is waived.  *See Jones v. Bock*, 549 U.S. 199, 212

(2007) (explaining that exhaustion under the Prison Litigation Reform Act is an affirmative defense that is waived if not raised by the defendant).

B.      Defendants Are Not Entitled to Qualified Immunity.

In the alternative, Defendants seek summary judgment on the basis that "the officers are entitled to qualified immunity." (MSJ at 22-24.) To the limited extent that Defendants actually raise a qualified immunity defense with respect to Mr. Rodriguez's excessive force claim, factual issues preclude summary judgment.

"[Q]ualified immunity protects state officials from civil liability for actions performed in the course of their duties if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quotation omitted). Because "qualified immunity is an affirmative defense as to which defendants have the burden of proof," it must be preserved in each defendant's answer and established "at trial or on a motion for summary judgment." *In re State Police Litig.*, 88 F.3d 111, 122-23 (2d Cir. 1996). If the qualified immunity defense is not raised "in a timely fashion" or "with sufficient particularity," it is waived. *McCardle v. Haddad*, 131 F.3d 43, 51-52 (2d Cir. 1997) (finding waiver where the defendant "did not pursue his qualified immunity defense" on summary judgment or in any other pretrial motion).

Defendants assert that Officer Galuzevskiy is entitled to qualified immunity "[b]ecause there is no case law directly on point stating . . . that using a water-based fire extinguisher to put out a fire in an inmate's cell while the inmate is in the cell is unconstitutional." (MSJ at 17, 22-23.) Because the facts surrounding Officer Galuzevskiy's use of force are completely disputed, qualified immunity is not available at this stage in the litigation.

18

Defendants' argument is predicated on the assertion that Officer Galuzevskiy deployed the fire extinguisher "to put out a fire."  (MSJ at 24.)  As explained above, that fact is subject to a genuine dispute.  According to Mr. Rodriguez's deposition testimony, by the time his cell door was opened, the fire inside was no longer burning.  (PSOF ¶ 11.)  Yet, even though there was no fire left to extinguish, Officer Galuzevskiy proceeded to spray the fire extinguisher directly at Mr. Rodriguez.  (PSOF ¶¶ 11-13.)  Thus, despite Defendants' claim that the use of the fire extinguisher was "necessary" under the circumstances, (MSJ at 16), a reasonable jury could find that Mr. Rodriguez was sprayed for no "legitimate nonpunitive governmental purpose."  *See Frost*, 980 F.3d at 252.

This factual dispute precludes summary judgment on Officer Galuzevskiy's qualified immunity defense.  An officer who "wantonly" sprays "a prisoner that poses no reasonable threat" with a fire extinguisher is not entitled to qualified immunity.  *Garcia v. Anderson*, No. 9:21 Civ. 0814 (GTS) (ML), 2023 WL 10365100, at *11-12  (N.D.N.Y. Nov. 13, 2023), *adopted by*, 2024 WL 446030 (N.D.N.Y. Feb. 6, 2024); *see also Rodriguez v. City of New York*, No. 14 Civ. 8647 (PGG) (FM), 2016 WL 11483837, at *10 (S.D.N.Y. Aug. 2, 2016), *adopted by*, 2016 WL 5476003 (S.D.N.Y. Sept. 29, 2016) ("It is . . . clear that a reasonable officer would have known that the malicious use of force for no penological purpose [was] unlawful.").  Because there remain "material issues of fact . . . with respect to Plaintiff's excessive force claim related to the use of the . . . fire extinguisher," summary judgment cannot be granted.  *Garcia*, 2023 WL 10365100, at *11.

Officer Williams is not entitled to qualified immunity for a simpler reason. Although Officer Williams pleaded qualified immunity as an affirmative defense in his answer (ECF No. 53 at ¶ 31), Defendants chose not to raise that argument on summary judgment. Officer Williams has therefore waived the qualified immunity defense. *Elder v. McCarthy*, 967 F.3d 113, 130 (2d Cir. 2020) ("The defense of qualified immunity may be waived if, as here, the defendants failed to move for summary judgment on this defense, even if, also as here, the defendants asserted the defense in their answer." (quotation omitted)).

In any event, qualified immunity would not be available to Officer Williams because his unjustifiable use of OC spray also violated clearly established law. It is "well-established . . . that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy*, 623 F.3d at 99 n.5. Accordingly, courts deny requests for summary judgment on the basis of qualified immunity where, as here, there is evidence that officers used chemical spray against a non-threatening inmate. *See, e.g.*, *Ross*, 2021 WL 3500163, at *13-14 (denying summary judgment because there were factual disputes that bore on whether the officer's use of chemical spray was gratuitous); *Lewis*, 2014 WL 1364934, at *10 (same); *Wiggan v. N.Y.C. Dep't of Corr.*, No. 12 Civ. 1405 (GBD) (HBP), 2014 WL 4631456, at *2 (S.D.N.Y. Sept. 16, 2014) (same); *Tracy*, 623 F.3d at 99 n.5 ("[W]e presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee."). Drawing all inferences in Mr. Rodriguez's favor, Officer Williams' use of OC spray ran "counter to clearly established Second Circuit law requiring that such substances 'not be used lightly or gratuitously' by police and corrections officers." *See Rodriguez v. City of*

*New York*, No. 14 Civ. 8647 (PGG) (FM), 2016 WL 5476003, at *9 (S.D.N.Y. Sept. 29, 2016) (quoting *Tracy*, 623 F.3d at 98).

II.     THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO WHETHER
        CAPTAIN MOISE'S FAILURE TO INTERVENE VIOLATED
        MR. RODRIGUEZ'S CONSTITUTIONAL RIGHTS.

        In conjunction with his excessive force claim, Mr. Rodriguez asserts that

Captain Moise is liable for failing to prevent the assault by Officers Williams and

Galuzevskiy.  (SAC ¶¶ 16, 26.)  Here, too, disputed issues of material fact preclude

summary judgment on Mr. Rodriguez's claim.  (*See* MSJ at 24-25.)

        "It is widely recognized that all law enforcement officials have an

affirmative duty to intervene to protect the constitutional rights of citizens from

infringement by other law enforcement officers in their presence."  *Anderson v. Branen*,

17 F.3d 552, 557 (2d Cir. 1994).  In the excessive force context, an officer will be held

liable for failure to intervene if "(1) the officer had a realistic opportunity to intervene

and prevent the harm; (2) a reasonable person in the officer's position would know that

the victim's constitutional rights were being violated; and (3) the officer [did] not take

reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512

(S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).  "Whether the officer had a

realistic opportunity to intervene is normally a question for the jury, unless, considering

all the evidence, a reasonable jury could not possibly conclude otherwise."  *Terebesi v.

Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) (quotation omitted).

        Defendants request summary judgment on Mr. Rodriguez's failure to

intervene claim for only one reason:  because "there can be no failure to intervene claim

where there was no constitutional violation" in the first instance.  (MSJ at 25.)  That

defense fails.  As explained in Section I, *supra*, a reasonable jury could find that Officers

Galuzevskiy and Williams violated Mr. Rodriguez's Fourteenth Amendment rights.
Since the Court cannot grant summary judgment "as to the underlying excessive force
claim," Defendants "are not entitled to summary judgment on the basis that there was no
underlying constitutional violation." *Ross*, 2021 WL 3500163, at *15.

Defendants raise no additional arguments in support of summary
judgment. Defendants do not argue that Mr. Rodriguez was required to exhaust his
failure to intervene claim. (*See* MSJ at 8.) They do not argue that Captain Moise is
protected by qualified immunity. (*See id.* at 22-24.) Nor do they raise any substantive
arguments regarding Captain Moise's conduct. (*See id.* at 24-25.) Accordingly, any such
alternative defenses are waived.

III.    THERE IS A DISPUTED ISSUE OF MATERIAL FACT AS TO WHETHER
        OFFICER GALUZEVSKIY RETALIATED AGAINST MR. RODRIGUEZ FOR
        FILING THIS LAWSUIT.

Officer Galuzevskiy is additionally liable for his repeated attempts to
coerce Mr. Rodriguez into dropping his suit. To sustain a First Amendment retaliation
claim, a prisoner must demonstrate (1) that they engaged in protected speech or conduct,
(2) that the defendant took adverse action against them, and (3) that there was a causal
connection between the protected speech and the defendant's adverse action. *Gill v.
Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit defines adverse action
"*objectively,* as retaliatory conduct that would deter a similarly situated individual of
ordinary firmness from exercising [their] constitutional rights." *Id.* at 381 (quotation
omitted). "This question . . . is factual in nature" and therefore ill-suited to summary
judgment. *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 335 (S.D.N.Y. 2015) (quotation
omitted).

Mr. Rodriguez's First Amendment claim may not be dismissed because a reasonable jury could find that Officer Galuzevskiy's retaliatory conduct violated the Constitution.  Defendants do not contest the first and third prongs of the First Amendment analysis.  There is no dispute that Mr. Rodriguez's § 1983 lawsuit is protected activity.  *Espinal v. Goord*, 558 F.3d 119, 128-29 (2d Cir. 2009).  Nor is it disputed that Officer Galuzevskiy's threats—intended to coerce Mr. Rodriguez into dropping his lawsuit—were causally related to that protected activity.  Instead, Defendants assert that Mr. Rodriguez cannot prevail on his claim as a matter of law because Officer Galuzevskiy's "[m]ere threats of retaliation, without more, do not suffice to satisfy the adverse action requirement."  (MSJ at 18.)

Defendants' statement of the law is wrong.  In this Circuit, verbal threats intended to chill protected speech "can constitute adverse action" for purposes of a First Amendment retaliation claim.  *Quezada v. Roy*, No. 14 Civ. 4056 (CM), 2015 WL 5970355, at *19 (S.D.N.Y. Oct. 13, 2015) (quotation omitted).  The inquiry hinges on whether the defendant's threat was "sufficiently specific and direct."  *Mateo v. Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865, at *5 (S.D.N.Y. July 16, 2013).  Although verbal abuse and vulgarity are not actionable, concrete retaliatory threats rise to the level of adverse action because they could deter an inmate of reasonable firmness from exercising their constitutional rights.  *See, e.g.*, *Murray v. Orange Cnty.*, No. 18 Civ. 634 (VB), 2019 WL 3765770, at *4 (S.D.N.Y. Aug. 9, 2019) (allowing First Amendment retaliation claim to proceed where officer made the "specific and direct" threat to "move plaintiff to the mental health unit" if he pursued his grievance); *White v. Westchester Cnty.*, No. 18 Civ. 730 (KMK), 2018 WL 6726555, at *17 (S.D.N.Y. Dec. 21, 2018)

(finding the statement "so file your grievance if you want and see what happens to your

white ass" to be a sufficiently "specific threat" to support a First Amendment retaliation

claim).

Officer Galuzevskiy confronted Mr. Rodriguez three times after this action

was filed on November 20, 2020. On December 4, 2020, Officer Galuzevskiy

approached Mr. Rodriguez in his cell and asked Mr. Rodriguez if he was being sued.

(DSOF ¶ 29; PSOF ¶ 52.) On December 15, 2020, Officer Galuzevskiy approached

Mr. Rodriguez in the shower and threatened him, telling Mr. Rodriguez that if he did not

drop his suit he would be "deadlocked"—meaning that he would be locked in his cell and

not permitted to leave or access services. (DSOF ¶ 32; PSOF ¶¶ 54-55.) And on

December 18, 2020, Officer Galuzevskiy again approached Mr. Rodriguez's cell, waived

his fist aggressively, and yelled "while I'm here, you stay in your cell" in a threatening

manner. (DSOF ¶ 35; PSOF ¶ 57.) Officer Galuzevskiy's threats caused Mr. Rodriguez

significant distress. (PSOF ¶ 59.) On December 19, 2020, the day after Officer

Galuzevskiy confronted Mr. Rodriguez for the third time, Mr. Rodriguez attempted

suicide in his cell. (PSOF ¶¶ 47, 59.)

Because Officer Galuzevskiy's "verbal threats" were sufficiently specific

and direct to constitute adverse action, Mr. Rodriguez has raised "a material issue of fact

as to whether . . . a reasonable prisoner [in his shoes] would have been deterred from the

exercise of his constitutional rights." *Hepworth v. Suffolk Cnty.*, No. 2:02 Civ. 6473

(ENV) (ETB), 2006 WL 2844408, at *9 (E.D.N.Y. Sept. 29, 2006). As in *Murray*—

where a threat to move an inmate to the "mental health unit" plausibly constituted

adverse action—Galuzevskiy's threat laid out a clear causal chain. *See* 2019 WL

24

3765770, at *4.  If Mr. Rodriguez did not drop his suit, he would have privileges revoked and would be "deadlocked" in his cell by Officer Galuzevskiy.  (DSOF ¶ 32; PSOF ¶ 55.) Threats with that level of "particularity . . . intended to 'deter' Plaintiff from exercising his First Amendment rights . . . constitute[] adverse action for purposes of a retaliation claim."  *White*, 2018 WL 6726555, at *18.  Indeed, Officer Galuzevskiy's threats were especially coercive because Galuzevskiy's violence against Mr. Rodriguez was the very genesis of this civil rights suit.  *See Perkins v. Perez*, No. 17 Civ. 1341 (KMK), 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019) (finding a verbal threat was "adverse action" in part because "the initial interaction" between the two parties involved the defendant's alleged use of excessive force).

It does not matter that Mr. Rodriguez was not, in fact, deterred from prosecuting his suit.  *See Ford v. Palmer*, 539 F. App'x 5, 7 (2d Cir. 2013).  "As the Second Circuit has explained, that a particular plaintiff . . . responded to retaliation with greater than ordinary firmness does not deprive him of a cause of action.  And this is especially so in cases—like this one—where the plaintiff is no stranger either to the grievance system or to the federal courts."  *Vincent*, 117 F. Supp. 3d at 336 (quotation omitted).  Mr. Rodriguez has experience as a pro se plaintiff and understands his rights better than many without legal training.  His resilience should not be counted against him. Moreover, Officer's Galuzevskiy's actions were far from costless; Mr. Rodriguez testified that Officer's Galuzevskiy's threats caused him significant psychological damage and stress, contributing to his suicide attempt on December 19, 2020.  (PSOF ¶¶ 47-48, 59.)  Because a rational factfinder could conclude that Officer's Galuzevskiy's

retaliatory conduct violated the First Amendment, Defendants are not entitled to judgment as a matter of law.

Lastly, Defendants do not raise any exhaustion or qualified immunity argument with respect to Mr. Rodriguez's First Amendment retaliation claim.  (*See* MSJ at 5-8, 22-24.)  Accordingly, those defenses are waived.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Rodriguez respectfully requests that the Court deny Defendants' motion for summary judgment with respect to his excessive force, failure to intervene, and First Amendment retaliation claims.

June 9, 2025

Respectfully submitted,


CRAVATH, SWAINE & MOORE LLP,

by

_____
/s/ Daniel Slifkin
Daniel Slifkin
Noah Rothman

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000


*Attorneys for Plaintiff Peter Rodriguez*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(c), I certify under penalty of perjury that the foregoing Memorandum of Law contains 7,320 words, excluding items exempted by Local Rule 7.1(c).  In making this certification I have relied upon the word count of the word-processing system used to prepare the memorandum.

June 9, 2025.

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

_____
                /s/ Daniel Slifkin
                Daniel Slifkin
                Noah Rothman

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for Plaintiff Peter Rodriguez*