UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

PETER RODRIGUEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, E.S.U. CAPTAIN MOISE
#1451, E.S.U. OFFICER GALUZEVSKIY #8957, E.S.U.
OFFICER TEMIR WILLIAMS #11475, CORRECTION
OFFICER FERRARO #1805, and CAPTAIN GIBSON,

Defendants.

------------------------------------------------------------------------ x

**RESPONSE TO
PLAINTIFF'S COUNTER-
STATEMENT TO
DEFENDANTS' RULE 56.1
STATEMENT OF
MATERIAL FACTS**

20 Civ. 9840 (JHR) (BCM)

Defendants City of New York, E.S.U. Captain Moise, E.S.U. Officer

Galuzevskiy, E.S.U. Officer Temir Williams, Correction Officer Ferraro, and Captain

Gibson, by their attorney Muriel Goode-Trufant, Corporation Counsel of the City of New

York, submit this counter statement pursuant to Rule 56.1 of the Local Civil Rules of the

United States District Court for the Southern District of New York, responding to

plaintiff's purportedly undisputed facts.

## I.     DEFENDANTS' RESPONSES TO PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants' Undisputed Fact No. 1:

On February 9, 2021, plaintiff filed a Second Amended Complaint ("SAC"),
wherein he sued the City of New York, Captain Bonar Moise, Captain Shaday
Gibson, Officer Aleksandr Galuzevskiy, Officer Temir Williams, and Officer
Peter Ferraro. Affidavit of Katherine J. Weall dated December 30, 2022 ("Weall
Aff."), Exh. A.

Plaintiff's Response to Defendants' Undisputed Fact No. 1:

1.  Undisputed.

1

Defendants' Undisputed Fact No. 2:

The SAC alleges the following claims:

    a)  deliberate indifference to medical needs against Captain Gibson pursuant to §1983, Weall Aff., Exh. A at ¶ 25;

    b)  deliberate indifference to conditions of confinement against Captain Gibson pursuant to §1983, Weall Aff., Exh. A at ¶

    c)  excessive force against Officers Williams and Galuzevskiy pursuant to §1983, Weall Aff., Exh. A at ¶ 23;

    d)  First Amendment retaliation against Officer Galuzevskiy, Weall Aff., Exh. A at ¶¶ 11-13;

    e)  harassment pursuant to §1983 and New York State law against Officer Galuzevskiy, Weall Aff., Exh. A at ¶ 23;

    f)  failure to intervene against Officer Ferraro pursuant to §1983, Weall Aff., Exh. A at ¶ 24;

    g)  supervisory liability against Captain Moise pursuant to §1983, Weall Aff., Exh. A at ¶ 22;

    h)  municipal liability against the City of New York pursuant to §1983, Weall Aff., Exh. A at ¶¶ 20-21;

    i)  assault and battery against Officers Williams and Galuzevskiy, Weall Aff., Exh. A at ¶ 23; and

    j)  respondeat superior against the City of New York, Weall Aff., Exh. A at ¶ 26.

Plaintiff's Response to Defendants' Undisputed Fact No. 2:

2.  Undisputed that Plaintiff brings the claims listed above.  In addition, Plaintiff also brings a failure to intervene claim against Captain Moise pursuant to § 1983.  (Affidavit of Noah Rothman ("Rothman Aff."), Ex. G, Second Amended Complaint ("SAC") at ¶¶ 16, 26 ("Moise . . . failed to intervene to prevent the assault on, and prevent further injury to Mr. Rodriguez.").)

**DEFENDANTS' RESPONSE**: This statement does not create a genuine issue of material fact. To the extent Plaintiff seeks to emphasize a distinct failure to intervene claim against Captain Moise, this is a characterization of the pleadings, not a statement of fact. This claim was addressed in Defendants' Memorandum of Law (ECF No. 146) at Point X, which argues that any failure-to-intervene claim fails as a matter of law.

Defendants' Undisputed Fact No. 3:

> Relevant to plaintiff's Monell claim, plaintiff claims only that the City failed to "train, supervise and alert its staff of the plaintiffs [sic] medical diagnoses and security considerations implemented by Correctional Health Services Doctors…." Weall Aff., Exh. A, ¶ 21.

Plaintiff's Response to Defendants' Undisputed Fact No. 3:

3. Undisputed.

Defendants' Undisputed Fact No. 4:

> As evidence of this allegedly unlawful policy of the City of New York, plaintiff points only to his own case. Weall Aff., Exh. A, ¶ 21.

Plaintiff's Response to Defendants' Undisputed Fact No. 4:

4. Undisputed.

Defendants' Undisputed Fact No. 5:

> The City, Department of Correction ("DOC") Captain Moise, Captain Gibson, Officer Ferraro, and Officer Williams answered the SAC on April 5, 2021, and on April 26, 2022, Officer Galuzevskiy timely answered the SAC. Weall Aff., Exh. B, Docket Sheet; *see* ECF No. 53; ECF No. 96.

Plaintiff's Response to Defendants' Undisputed Fact No. 5:

5. Undisputed.

Defendants' Undisputed Fact No. 6:

On August 31, 2020, plaintiff was housed in DOC custody in cell number 3 on floor 9 South at the Manhattan Detention Center ("MDC") in Manhattan. Weall Aff., Exh. A, SAC, ¶¶ 1-2.

Plaintiff's Response to Defendants' Undisputed Fact No. 6:

6.  Undisputed.

Defendants' Undisputed Fact No. 7:

Unit 9 South is Enhanced Security Housing. *See* Weall Aff., Exh C, Deposition Transcript of Peter Rodriguez dated September 14, 2022 ("Rodriguez Deposition") at 35:14-15.

Plaintiff's Response to Defendants' Undisputed Fact No. 7:

7.  Undisputed.

Defendants' Undisputed Fact No. 8:

On August 31, 2020, Captain Moise was the Emergency Services Unit ("ESU") captain for the MDC 9 South Security Detail. Weall Aff., Exh. D, Investigation Report dated September 3, 2020 ("Investigation Report").

Plaintiff's Response to Defendants' Undisputed Fact No. 8:

8.  Undisputed.

Defendants' Undisputed Fact No. 9:

On August 31, 2020, Officers Williams and Galuzevskiy were working as ESU officers on 9 South at MDC. Weall Aff., Exh. D, Investigation Report.

Plaintiff's Response to Defendants' Undisputed Fact No. 9:

9.  Undisputed.

Defendants' Undisputed Fact No. 10:

On August 31, 2020, plaintiff was locked in his cell. Weall Aff., Exh. C, Rodriguez Deposition at 65:9-12; Exh. A SAC, at ¶ 2.

Plaintiff's Response to Defendants' Undisputed Fact No. 10:

10. Undisputed.

Defendants' Undisputed Fact No. 11:

Plaintiff was in his cell alone. Weall Aff., Exh. A SAC, at ¶ 2.

Plaintiff's Response to Defendants' Undisputed Fact No. 11:

11. Undisputed.

Defendants' Undisputed Fact No. 12:

A fire started in plaintiff's cell. Weall Aff., Exh. A, SAC at ¶ 2; Weall Aff., Exh. E, Facility Referral: U4068/2020 at DEF 7748.

Plaintiff's Response to Defendants' Undisputed Fact No. 12:

12. Undisputed.

Defendants' Undisputed Fact No. 13:

Officer Ferraro and ESU officers Galuzevskiy, Williams, and Lewis (the "ESU officers") responded to plaintiff's cell. Weall Aff., Exh. D Investigation Report, DEF 000425; Weall Aff., Exh. F, Closing Report for Use of Force Investigation U4068-20 ("Closing Report", DEF 000005 - 000007.

Plaintiff's Response to Defendants' Undisputed Fact No. 13:

13. Undisputed that Officers Ferraro, Galuzevskiy, Williams, and Lewis responded to Mr.

Rodriguez's cell. Captain Moise also responded to Mr. Rodriguez's cell. (Rothman

Aff., Ex. B, Rodriguez Dep. Tr. 37:21-25.)

**DEFENDANTS' RESPONSE**: Defendants do not dispute that Captain Moise was present at the scene. (*See* Def. 56.1 ¶ 15). However, to the extent Plaintiff's response implies that all officers arrived simultaneously, that is disputed. (*See* Weall Aff., Exh. D, DEF000425). Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Defendants' Undisputed Fact No. 14:

> Officer Ferraro brought a fire extinguisher. Weall Aff., Exh. D Investigation Report, DEF 000425.

Plaintiff's Response to Defendants' Undisputed Fact No. 14:

14. Undisputed.

Defendants' Undisputed Fact No. 15:

> Thereafter, Captain Moise responded to plaintiff's cell and instructed Officer Ferraro to leave, which Officer Ferraro did. Weall Aff., Exh. A, SAC at ¶¶ 3-4; Exh. D, Investigation Report, DEF 000425.

Plaintiff's Response to Defendants' Undisputed Fact No. 15:

15. Undisputed that Captain Moise responded to Mr. Rodriguez's cell and instructed Officer Ferraro to leave, which Officer Ferraro did.

Defendants' Undisputed Fact No. 16:

> Officer Ferraro was not personally involved in anything that happened thereafter. Weall Aff., Exh. A, SAC at ¶¶ 3, 4.

Plaintiff's Response to Defendants' Undisputed Fact No. 16:

16. Undisputed.

<u>Defendants' Undisputed Fact No. 17:</u>

> Officer Galuzevskiy then opened the door to plaintiff's cell and used a water-based fire extinguisher to extinguish the fire. Weall Aff., Exh. C, Rodriguez Deposition at 41:17-20; Weall Aff., Exh. D, Investigation Report, DEF 000425.

<u>Plaintiff's Response to Defendants' Undisputed Fact No. 17:</u>

17. Disputed.  MDC officers initially extinguished the fire through the food slot in Mr. Rodriguez's cell door.  (Rothman Aff., Ex. L, Investigation Report at DEF000425; Rothman Aff., Ex. C, UOF Package at DEF000014.)  By the time officers opened the door to Mr. Rodriguez's cell, there was no active fire inside.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 36:1-6, 39:12-15, 40:3-11, 42:10-12.)  Instead of extinguishing any fire, Officer Galuzevskiy sprayed Mr. Rodriguez in the face with the fire extinguisher.  (Rothman Aff., Ex. A, Facility Referral at DEF007748; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 39:1-11, 40:18-23; 41:1-3.)

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiff's denial rests on his own self-serving deposition testimony, which is contradicted by objective video evidence showing that the fire was still active. (Zangrilli Aff., Exh. M, O at 18:16:05–18:16:07 (showing glowing embers falling from cell door); Exh. N at 1:19–1:25 (showing fire still burning at top left of cell, in the area where Officer Galuzevskiy was spraying the fire extinguisher, as Plaintiff is escorted out); Ex. O at 18:16:55–18:17:02 (same).) As set forth in Defendants' Response to Plaintiff's Statement of Additional Facts ("Defs.' Resp. to PSOF") ¶¶ 11, 13, *infra*,[1]

---

[1] Plaintiff's opposition numbered his "Statement of Additional Facts" anew, beginning at ¶ 1 rather than continuing the sequence used in Defendants' Statement of Facts ("DSOF"). To avoid confusion, citations in this brief use "DSOF ¶ __" for Defendants' original numbered paragraphs and "Defs.' Resp. to PSOF ¶ __" for the corresponding paragraphs in Plaintiff's separately numbered submission.

the video evidence and contemporaneous reports confirm that Officer Galuzevskiy was engaged in the legitimate penological purpose of extinguishing a fire. Because Plaintiff has failed to controvert this fact with admissible evidence and his response rests on argument rather than fact, it should be deemed admitted. Plaintiff's conclusory statements that there was no active fire and that the extinguisher was used to spray Mr. Rodriguez are unsupported argument, not fact, and are insufficient to create a genuine issue for trial.

Defendants' Undisputed Fact No. 18:

While Officer Galuzevskiy extinguished the fire, plaintiff was sprayed with the fire extinguisher. Weall Aff., Exh. C, Rodriguez Deposition at 39:3-11.

Plaintiff's Response to Defendants' Undisputed Fact No. 18:

18. Disputed that Officer Galuzevskiy extinguished the fire, because there was no active fire inside Mr. Rodriguez's cell by the time that officers opened the cell door. (Rodriguez Dep. Tr. 36:1-6, 39:12-15, 40:3-11, 42:10-12.)  Undisputed that Officer Galuzevskiy sprayed Mr. Rodriguez in the face with the fire extinguisher.

**DEFENDANTS' RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance and, as such, is not an actual dispute of fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014). As set forth in Defendants' Response to PSOF ¶¶ 11, 13, *infra*, the objective video evidence and contemporaneous reports confirm that officers were engaged in extinguishing a fire.

Defendants' Undisputed Fact No. 19:

Officer Williams and Officer Lewis deployed OC spray on plaintiff. Weall Aff., Exh. E, Facility Referral, at DEF 7749; Weall Aff., Exh. C, Rodriguez Deposition

at 41:5-6.

Plaintiff's Response to Defendants' Undisputed Fact No. 19:

19. Undisputed.

Defendants' Undisputed Fact No. 20:

    Plaintiff was promptly taken to Intake and the decontamination showers for decontamination. Weall Aff., Exh. F, Closing Report, at DEF 000017; Weall Aff., Exh. C, Rodriguez Deposition at 45:10-12, 22-23.

Plaintiff's Response to Defendants' Undisputed Fact No. 20:

20. Disputed that Mr. Rodriguez was "promptly" taken to the decontamination showers.

Mr. Rodriguez was left in the elevator vestibule for more than 15 minutes before he

was taken to decontamination. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 42:16-

43:5; Rothman Aff., Ex. C, UOF Package at DEF000014-15.)

**DEFENDANTS' RESPONSE**: Plaintiff's purported dispute does not actually challenge

the factual substance and, as such, is not an actual dispute of fact. *See Baity*, 51 F. Supp.

3d at 418. As set forth in Defendants' Response to PSOF ¶ 22, *infra*, Plaintiff was under

continuous supervision while in the vestibule for a brief period necessary to secure the

area for a safe escort. This is not a material issue of fact sufficient to defeat summary

judgment.

Defendants' Undisputed Fact No. 21:

    After plaintiff was decontaminated, Captain Gibson escorted him to the clinic for medical treatment. Weall Aff., Exh. C, Rodriguez Deposition at 47:19-20.

Plaintiff's Response to Defendants' Undisputed Fact No. 21:

21. Undisputed that Captain Gibson escorted Mr. Rodriguez to the clinic after leaving

Mr. Rodriguez in the decontamination area for more than five hours.  (Rothman Aff.,

Ex. C, UOF Package at DEF000016; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 45:22-

46:1.)

**DEFENDANTS' RESPONSE**: Plaintiff does not deny this fact, and thus it should be

deemed admitted in its entirety. To the extent plaintiff purports to add facts, they are

irrelevant and should be disregarded. As set forth in defendants' Response to PSOF ¶ 29,

*infra*, the delay in medical care was caused by plaintiff's own refusal to be escorted to the

clinic.

Defendants' Undisputed Fact No. 22:

> Plaintiff told medical personnel that he denied any injury or pain. Weall Aff.,
> Exh. G, Injury to Inmate Report, at DEF 000428 (plaintiff "denies injury/pain");
> Weall Aff., Exh. H, Medical Records, at DEF 3845, 3846; Weall Aff., Exh. C,
> Rodriguez Deposition at 47:10-16.

Plaintiff's Response to Defendants' Undisputed Fact No. 22:

22. Undisputed that Mr. Rodriguez denied injury at the clinic and therefore was not

examined.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 47:10-12; Rothman Aff., Ex. E,

Injury to Inmate Report at DEF000445; Rothman Aff., Ex. F, Medical Records at

DEF003844-46.)  Disputed to the extent Defendants imply that Mr. Rodriguez in fact

suffered no harm; Mr. Rodriguez denied his injuries because Captain Gibson told him

that his property would not be returned to him if he requested treatment.  (Rothman

Aff., Ex. B, Rodriguez Dep. Tr. 46:23-47:3.)

10

**DEFENDANTS' RESPONSE**: Defendants object to plaintiff's subjective characterization of the evidence and respectfully refer the Court to the evidence cited. Plaintiff's attempt to dispute this fact rests entirely on his own uncorroborated, self-serving testimony, which is insufficient to create a genuine issue of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). As set forth in Defendants' Response to PSOF ¶ 31, *infra*, Plaintiff's claim of coercion is further contradicted by his refusal to sign the medical refusal form.

Defendants' Undisputed Fact No. 23:

> A doctor at the clinic observed that plaintiff had no visible injuries. Weall Aff., Exh. G, Injury to Inmate Report, DEF 000428, DEF 000428 (plaintiff had "no signs of gross injury"); Weall Aff., Exh. H, Medical Records, at DEF 3845, 3846.

Plaintiff's Response to Defendants' Undisputed Fact No. 23:

23. Undisputed that the medical report reflected no visible injuries after Mr. Rodriguez denied any need for treatment and therefore was not examined.

Defendants' Undisputed Fact No. 24:

> Plaintiff complained only of mild shortness of breath ("SOB") but had "no respiratory distress." Weall Aff., Exh. H, Medical Records, at DEF 3847-3849.

Plaintiff's Response to Defendants' Undisputed Fact No. 24:

24. Disputed. The medical records cited here (DEF003847-49) pre-date Defendants' use of force and Mr. Rodriguez's subsequent visit to the clinic. The report Defendants cite is dated "8/31/2020 2:00:48 P.M." (Rothman Aff., Ex. F, Medical Records at DEF003849.) Defendants' use of force occurred between 6:00 and 7:00 p.m., more than four hours later. (Rothman Aff., Ex. A, Facility Referral at DEF007748.) The medical records from Mr. Rodriguez's visit to the clinic after the use of force

indicated only that Mr. Rodriguez "refuse[d] medical services" and that there was "no visible injury." (Rothman Aff., Ex. F, Medical Records at DEF003844-46.) There was no evaluation of Mr. Rodriguez's respiratory health after the use of force. However, Defendants' assault exacerbated Mr. Rodriguez's asthma and caused significant respiratory distress. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 50:1-2; 74:5-12; 78:6-16.)

**DEFENDANTS' RESPONSE**: Defendants note the temporal error in the original citation and withdraw reliance on records DEF003847-49. Plaintiff's subjective claims of respiratory distress are contradicted by the post-incident medical records, which remain undisputed. At a medical visit earlier in the afternoon, at approximately 2:00 p.m. on August 31, 2020, prior to the fire Plaintiff set at 6:15 p.m., which is at issue in this case, he complained of "mild SOB in setting of still fire in his cell[]" and was prescribed an albuterol inhaler. (Weall Aff., Exh. H, Medical Records, at DEF003847–49). However, at no time after the second fire and use of force at issue here did plaintiff ever request the inhaler he had just been prescribed. (Rothman Aff., Ex. F, Medical Records at DEF003844–46; Zangrilli Aff., Exh. N at 04:40–21:57.) Plaintiff's reliance on subsequent deposition testimony cannot create a genuine dispute where contemporaneous medical documentation contradicts his current assertions. His claim is further contradicted by his own statements and actions captured on the handheld video immediately following the incident, where he can be heard taunting staff virtually continuously for over nine minutes without any signs of shortness of breath. (Zangrilli Aff., Exh. N  at 04:40–13:15.) He is also heard contemporaneously mocking the effects of the spray, stating, "Spray me. I'll wash it off." (Zangrilli Aff., Exh. N   at 5:48.)

12

Defendants' Undisputed Fact No. 25:

      Plaintiff now claims that he suffered from "agitation of my asthma condition, numbness, pain in the wrists, pain in the eyes, fuzzy vision, reduced vision, nightmares, anxiety, depression, insomnia, and Post Traumatic Stress." Weall Aff., Exh. C, Rodriguez Deposition at 74:5-9.

Plaintiff's Response to Defendants' Undisputed Fact No. 25:

25. Undisputed that Mr. Rodriguez alleges those injuries from Defendants' use of force

    on August 31, 2020.

Defendants' Undisputed Fact No. 26:

      Plaintiff was then returned to his cell. Weall Aff. Exh. C, Rodriguez Deposition at 49:9-14.

Plaintiff's Response to Defendants' Undisputed Fact No. 26:

26. Undisputed.

Defendants' Undisputed Fact No. 27:

      Plaintiff's cell had not been cleaned since the fire was extinguished, and was not for 12 hours. Weall Aff., Exh. A, SAC, ¶ 9, Exh. C, Rodriguez Deposition at 49:11-19.

Plaintiff's Response to Defendants' Undisputed Fact No. 27:

27. Undisputed that Mr. Rodriguez's cell was not cleaned for at least 12 hours.

Defendants' Undisputed Fact No. 28:

      Plaintiff does not claim that any defendant refused to clean his cell or refused to give him cleaning supplies to clean the cell. Weall Aff., Exh. A, SAC at ¶9; Weall Aff., Exh. C, Rodriguez Deposition at 49:11-19.

Plaintiff's Response to Defendants' Undisputed Fact No. 28:

28. Disputed.  Despite complaining about the conditions in his cell, Mr. Rodriguez was

    never given any cleaning supplies, and Defendants did not clean his cell for at least

    12 hours.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 49:11-19; Rothman Aff., Ex. G,

    SAC at ¶ 9.)

**DEFENDANTS' RESPONSE**: Plaintiff's purported dispute does not actually challenge

the factual substance and, as such, is not an actual dispute of fact. *See Baity v. Kralik*, 51

F. Supp. 3d 414, 418 (S.D.N.Y. 2014). Defendants further state this is not a material issue

of fact sufficient to defeat summary judgment.


Defendants' Undisputed Fact No. 29:

    On December 4, 2020, Officer Galuzevskiy approached plaintiff's cell and asked
    plaintiff if he was suing him. Weall Aff., Exh. C, Rodriguez Deposition at 56:3-8.

Plaintiff's Response to Defendants' Undisputed Fact No. 29:

29. Undisputed.


Defendants' Undisputed Fact No. 30:

    On December 4, 2020, plaintiff had not yet named Officer Galuzevskiy as a
    defendant in this action. *See* Weall Aff., Exh. I, Complaint, ECF No. 2, filed
    November 20, 2020; Exh. J, First Amended Complaint ("FAC"), ECF No. 14,
    Filed December 21, 2020.

Plaintiff's Response to Defendants' Undisputed Fact No. 30:

30. Disputed.  When the initial complaint in this action was filed, Mr. Rodriguez did not

    know Officer Galuzevskiy's name.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 56:14-

    21, 57:15-20.)  Therefore, Mr. Rodriguez sued Officer Galuzevskiy as a "John Doe,"

described in the complaint as a "white male" whose "last name starts with a 'G.'"

(Rothman Aff., Ex. J, Complaint at 1, 5.)


**DEFENDANTS' RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance and, as such, is not an actual dispute of fact. *See Baity*, 51 F. Supp. 3d at 418. The material fact that Officer Galuzevskiy was not identified by name or shield number remains uncontroverted and should be deemed admitted. Finally, defendants state this is not a material issue of fact sufficient to defeat summary judgment.


Defendants' Undisputed Fact No. 31:

   There was no other exchange between himself and Officer Galuzevskiy on that date. Weall Aff., Exh. C, Rodriguez Deposition at 56:3-11.

Plaintiff's Response to Defendants' Undisputed Fact No. 31:

31. Undisputed.


Defendants' Undisputed Fact No. 32:

   On December 15, 2020, Officer Galuzevskiy approached plaintiff in the shower area on December 15, 2020, and threatened him, telling him that if he did not drop the lawsuit he would be deadlocked in his cell. Weall Aff., Exh. C, Rodriguez Deposition at 61:12-18; 65:6-8.

Plaintiff's Response to Defendants' Undisputed Fact No. 32:

32. Undisputed.


Defendants' Undisputed Fact No. 33:

   There was no other exchange between plaintiff and Officer Galuzevskiy on that date. Weall Aff., Exh. A, SAC generally.

Plaintiff's Response to Defendants' Undisputed Fact No. 33:

33. Undisputed.

Defendants' Undisputed Fact No. 34:

>    As of December 15, 2020, no amended complaint had yet been filed naming
>    Officer Galuzevskiy as a defendant in this action. Weall Aff., Exh. I, Complaint,
>    ECF No. 2, filed November 20, 2020; Weall Aff., Exh. J, FAC, ECF No. 14, filed
>    December 21, 2020.

Plaintiff's Response to Defendants' Undisputed Fact No. 34:

34. Undisputed that no amended complaint had yet been filed.  Disputed that Officer

Galuzevskiy had not been named as a defendant in this action as of December 15,

2020.  When the initial complaint in this action was filed, Mr. Rodriguez did not

know Officer Galuzevskiy's name.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 56:14-

21, 57:15-20.)  Therefore, Mr. Rodriguez sued Officer Galuzevskiy as a "John Doe,"

described in the complaint as a "white male" whose "last name starts with a 'G.'"

(Rothman Aff., Ex. J, Complaint at 1, 5.)


**DEFENDANTS' RESPONSE**: Plaintiff's purported dispute does not actually challenge

the factual substance and, as such, is not an actual dispute of fact. *See Baity*, 51 F. Supp.

3d at 418. The material fact that Officer Galuzevskiy was not identified by name or shield

number remains uncontroverted and should be deemed admitted. Finally, defendants state

this is not a material issue of fact sufficient to defeat summary judgment.


Defendants' Undisputed Fact No. 35:

>    On December 18, 2020, Officer Galuzevskiy approached plaintiff's cell, waived
>    his fist aggressively, and stated "while I'm here, you stay in your cell." Weall
>    Aff., Exh. C, Rodriguez Deposition at 68:17-25.

Plaintiff's Response to Defendants' Undisputed Fact No. 35:

35. Undisputed.


<u>Defendants' Undisputed Fact No. 36:</u>

Officer Galuzevskiy did not say anything else to plaintiff on that date. Weall Aff., Exh. C, Rodriguez Deposition at 68:22-25.

<u>Plaintiff's Response to Defendants' Undisputed Fact No. 36:</u>

36. Undisputed.


<u>Defendants' Undisputed Fact No. 37:</u>

As of December 18, 2020, no complaint had yet been filed naming Officer Galuzevskiy as a defendant in this lawsuit. *See* Weall Aff., Exh. I, Complaint, ECF No. 2, filed November 20, 2020; Weall Aff., Exh. J, FAC, ECF No. 14, filed December 21, 2020.

<u>Plaintiff's Response to Defendants' Undisputed Fact No. 37:</u>

37. Disputed.  When the initial complaint in this action was filed, Mr. Rodriguez did not

know Officer Galuzevskiy's name.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 56:14-

21, 57:15-20.)  Therefore, Mr. Rodriguez sued Officer Galuzevskiy as a "John Doe,"

described in the complaint as a "white male" whose "last name starts with a 'G.'"

(Rothman Aff., Ex. J, Complaint at 1, 5.)


**DEFENDANTS' RESPONSE**: Plaintiff's purported dispute does not actually challenge

the factual substance and, as such, is not an actual dispute of fact. *See Baity*, 51 F. Supp.

3d at 418. The material fact that Officer Galuzevskiy was not identified by name or shield

number remains uncontroverted and should be deemed admitted. Finally, defendants state

this is not a material issue of fact sufficient to defeat summary judgment.


<u>Defendants' Undisputed Fact No. 38:</u>

17

During his medical visit on December 17, 2020, and at subsequent visits on December 18, 2020, through December 22, 2020, plaintiff did not complain of being harassed and/or threatened by any correction officer. Weall Aff., Exh. H, Medical Records, at DEF 3436-3564; *see in particular* DEF 3562-3564; DEF 3505; DEF 3515.

Plaintiff's Response to Defendants' Undisputed Fact No. 38:

38. Undisputed that Mr. Rodriguez's medical records on those dates do not reflect any

complaints regarding DOC officers.


Defendants' Undisputed Fact No. 39:

Plaintiff did not file any grievances with DOC related to any of the above incidents. Exh. A, SAC ¶¶ 18-19.

Plaintiff's Response to Defendants' Undisputed Fact No. 39:

39. Undisputed.


Defendants' Undisputed Fact No. 40:

Directive 3376R-A was in effect on August 31, 2020, and is the governing grievance procedure in this action. https://www.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf (accessed December 6, 2022). Weall Aff., Exh. K, Directive 3376R-A.

Plaintiff's Response to Defendants' Undisputed Fact No. 40:

40. Undisputed.


Defendants' Undisputed Fact No. 41:

Plaintiff has made multiple calls to 311 to complain about other prison conditions during his time in DOC custody unrelated to this lawsuit. Weall Aff., Exh. L, 311 Complaints of Peter Rodriguez.

Plaintiff's Response to Defendants' Undisputed Fact No. 41:

41. Undisputed.


Defendants' Undisputed Fact No. 42:

Plaintiff never called 311 to complain about any of the incidents in the present SAC. Weall Aff., Exh. L, 311 Complaints of Peter Rodriguez.

Plaintiff's Response to Defendants' Undisputed Fact No. 42:

42. Undisputed.

## II.    DEFENDANTS' COUNTER-STATEMENT TO PLAINTIFF'S RULE 56.1 STATEMENT OF ADDITIONAL RELEVANT FACTS

### A.    The Events of August 31, 2020.

Plaintiff's Undisputed Fact No. 1:

On August 31, 2020, Peter Rodriguez was held in pretrial detention at the Manhattan Detention Complex ("MDC") in downtown Manhattan.  (Rothman Aff., Ex. A, Facility Referral at DEF007748; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 34:17-19.)

Defendants' Response to Plaintiff's Undisputed Fact No. 1:

1.    **Undisputed**.

Plaintiff's Undisputed Fact No. 2:

On the morning of August 31, 2020, between 9:00 and 10:00 a.m., MDC officers confiscated Mr. Rodriguez's personal property from his cell, leaving only a mattress.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 36:24-37:5.)

Defendants' Response to Plaintiff's Undisputed Fact No. 2:

2.  **Disputed.** This allegation is supported only by Plaintiff's self-serving deposition testimony and is uncorroborated by any documentary evidence in the record, as a fire was started inside the cell. Defendants denied this allegation in their Answer. (Answer to SAC, ¶ 2). Plaintiff's unsubstantiated assertion is insufficient to create a genuine issue of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Plaintiff's Undisputed Fact No. 3:

At approximately 6:15 p.m., a fire started in Mr. Rodriguez's cell.  (Rothman Aff., Ex. A, Facility Referral at DEF007748; Rothman Aff., Ex. C, UOF Package at DEF000014; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 32:10-12, 34:15-16.)

Defendants' Response to Plaintiff's Undisputed Fact No. 3:

3.  **Undisputed**.

Plaintiff's Undisputed Fact No. 4:

At least five MDC officers and two captains responded to the fire.  (Rothman Aff., Ex. C, UOF Package at DEF000014.)

Defendants' Response to Plaintiff's Undisputed Fact No. 4:

4.   **Undisputed**.

Plaintiff's Undisputed Fact No. 5:

     Among those responding were Officer Peter Ferraro, Officer Aleksandr Galuzevskiy, Officer Temir Williams, Officer Damien Lewis, and Captain Bonar Moise.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 37:21-25; Rothman Aff., Ex. C, UOF Package at DEF000014.)

Defendants' Response to Plaintiff's Undisputed Fact No. 5:

5.   **Undisputed**.

Plaintiff's Undisputed Fact No. 6:

     Officer Ferraro arrived on the scene carrying a fire extinguisher.  (Rothman Aff., Ex. L, Investigation Report at DEF000425.)

Defendants' Response to Plaintiff's Undisputed Fact No. 6:

6.   **Undisputed**.

Plaintiff's Undisputed Fact No. 7:

     Using the fire extinguisher, Officer Ferraro sprayed the fire through the food slot in Mr. Rodriguez's cell door.  (Rothman Aff., Ex. L, Investigation Report at DEF000425; Rothman Aff., Ex. C, UOF Package at DEF000014.)

Defendants' Response to Plaintiff's Undisputed Fact No. 7:

7.   **Undisputed**.

Plaintiff's Undisputed Fact No. 8:

     Captain Moise instructed Officer Ferraro to leave the scene and told Officer Ferraro "you can leave, we will take care of him."  (Rothman Aff., Ex. L, Investigation Report at DEF000425; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 38:13-18.)

Defendants' Response to Plaintiff's Undisputed Fact No. 8:

8.   **Undisputed**.

Plaintiff's Undisputed Fact No. 9:

 Officer Ferraro left the scene, handing the fire extinguisher to Officer Galuzevskiy. (Rothman Aff., Ex. L, Investigation Report at DEF000425.)

Defendants' Response to Plaintiff's Undisputed Fact No. 9:

9. **Undisputed**.

Plaintiff's Undisputed Fact No. 10:

 The officers opened the door to Mr. Rodriguez's cell. (Rothman Aff., Ex. L, Investigation Report at DEF000425; Rothman Aff., Ex. B, Rodriguez Dep. Tr. at 38:21-23.)

Defendants' Response to Plaintiff's Undisputed Fact No. 10:

10. **Undisputed**.

Plaintiff's Undisputed Fact No. 11:

 When the officers opened the door, the fire was no longer burning, but there was smoke in the cell. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 36:1-6, 39:12-15, 40:3-11, 42:10-12.)

Defendants' Response to Plaintiff's Undisputed Fact No. 11:

11. **Disputed**. Plaintiff's assertion that the fire was "no longer burning" is contradicted by objective video evidence, which shows glowing embers actively falling from the top of the cell as the door is opened, as well as smoke. (Zangrilli Aff., Exhs. M, O at 18:16:05–18:16:07.)

Plaintiff's Undisputed Fact No. 12:

 The smoke did not block the line of sight between Mr. Rodriguez and the officers at the threshold of the cell. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 36:1-6, 40:3-11, 42:10-12.)

Defendants' Response to Plaintiff's Undisputed Fact No. 12:

12. **Disputed**. The video evidence shows plaintiff's cell filled with a significant amount of smoke. (*See* Zangrilli Aff., Exhs. N, M, O at 18:16:05–18:16:17.) Plaintiff's statement is a subjective characterization and unsupported argument, not an undisputed fact.

Plaintiff's Undisputed Fact No. 13:

> Officer Galuzevskiy sprayed Mr. Rodriguez in the face with the fire extinguisher. (Rothman Aff., Ex. A, Facility Referral at DEF007748; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 39:1-11, 40:18-23; 41:1-3.)

Defendants' Response to Plaintiff's Undisputed Fact No. 13:

13. **Disputed**. This assertion is contradicted by the objective video evidence, which depicts Officer Galuzevskiy directing the extinguisher spray above and around Plaintiff for approximately 13 seconds to extinguish smoldering fire remnants and clear the smoke-filled cell. (Zangrilli Aff., Exh. N at 00:39-00:42; Exhs. M, O at 18:16:07–18:16:19.) Further, plaintiff's assertion is misleading insofar as plaintiff's cited evidence, the Facility Referral, clearly states that Officer Galuzevskiy retrieved the fire extinguisher "to put out the fire," and makes no mention whatsoever of plaintiff being sprayed in the face. (Rothman Aff., Ex. A, Facility Referral at DEF007748.)

Plaintiff's Undisputed Fact No. 14:

> Mr. Rodriguez asked Officer Galuzevskiy to stop and raised his hands in the air in a "surrender mode" position with his palms facing out.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 39:1-40:2, 40:18-23, 41:1-6.)

Defendants' Response to Plaintiff's Undisputed Fact No. 14:

14. **Disputed**. This assertion is contradicted by the objective video evidence. The footage shows that as the cell door opened, Plaintiff turned his back to the officers with his hands out in front of him and out of view of the officers. (Zangrilli Aff., Exhs. M, O at 18:16:07.) Plaintiff then moved further into his cell, out of view of the cameras. (Zangrilli Aff., Exhs. M, O at 18:16:12–18:16:18) before lunging aggressively toward the officers at the cell door. (Zangrilli Aff., Exhs. M, O at 18:16:18.) At no point did Plaintiff raise his hands in a "surrender mode." A few minutes after the incident, plaintiff admitted that he intentionally moved out of view of the camera, planning to attack one of the ESU officers with a blade (Zangrilli Aff., Exh. N at 9:24–9:34 ("You could have just came in, like, I don't know, y'all guys ESU, you should have just come in to visit. I was waiting, I was going to slash one of y'all n*****. But I never got caught on camera.").) Plaintiff's self-serving testimony does not create a genuine issue of material fact in the face of the objective evidence in the record.

Plaintiff's Undisputed Fact No. 15:

> None of the other officers attempted to stop Officer Galuzevskiy.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 40:24-41:3.)

Defendants' Response to Plaintiff's Undisputed Fact No. 15:

15. **Disputed** to the extent that this fact implies a constitutional violation occurred that required intervention. As established in Defs' Resp. to PSOF ¶ 13, *supra*, Officer Galuzevskiy was engaged in the legitimate penological purpose of extinguishing a fire. There was no unlawful act for the other officers to halt.

Plaintiff's Undisputed Fact No. 16:

> Mr. Rodriguez stepped toward the doorway with his hands still raised in "surrender mode." He did not disobey any order or threaten any officer. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 39:16-40:2, 40:12-17, 41:4-13, 41:25-42:7.)

Defendants' Response to Plaintiff's Undisputed Fact No. 16:

16. **Disputed**. Plaintiff's assertion is contradicted by the objective video evidence. The video shows that upon the door opening, an officer gave a clear verbal command: "do not get out of your cell." (Zangrilli Aff., Exh. N, 0:29; Exhs. M, O at 18:16:07.) This instruction was repeated 12 seconds later. Instead of complying, Plaintiff turned his back, concealed his hands, and then lunged aggressively out of the smoke toward the officers. (Zangrilli Aff., Exhs. M, O at 18:16:18.) This constituted both a failure to obey a direct order and a violent action.

Plaintiff's Undisputed Fact No. 17:

> As Mr. Rodriguez moved forward, Officer Galuzevskiy told Officer Williams to "get him." (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 39:19-21.)

Defendants' Response to Plaintiff's Undisputed Fact No. 17:

17. **Disputed**. Plaintiff's assertion is contradicted by the objective video evidence. The video shows that, at the same time OC Spray is deployed, an officer repeats his command "do not get out of your cell" and then reacts to plaintiff's sudden movement by saying "hey!" (Zangrilli Aff., Exh. N at 0:42; Ex. O at 18:16:19.) No command to "get him" is uttered either before or after the fire extinguisher or OC spray are deployed. (*See generally* Zangrilli Aff., Exhs. N, O.)

Plaintiff's Undisputed Fact No. 18:

> Without issuing any warning, Officers Williams and Lewis simultaneously sprayed Mr. Rodriguez in the face with a two-second burst of OC (pepper) spray. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 41:1-13, 41:21-42:15; Rothman Aff., Ex. C, UOF Package at DEF0000014, DEF000021, DEF000042 (Captains Moise and Gibson attesting to fact that verbal commands were not attempted before force was used).)

Defendants' Response to Plaintiff's Undisputed Fact No. 18:

18. **Undisputed** that a two-second burst of OC spray was deployed by Officers Williams and Lewis. **Disputed** that the use of force was "without warning." As shown on the video, Plaintiff was given clear verbal commands not to exit his cell, which he disobeyed while lunging at staff. (Zangrilli Aff., Exh. N at 00:29, 00:40; Exhs. M, O at 18:16:07, 18:16:18.) The use of OC spray was in direct response to Plaintiff's threatening actions and was therefore not unprovoked. The UOF reports cited by Plaintiff, stating "verbal commands were not attempted," are taken out of context; these refer to de-escalation commands immediately preceding the use of force, not the commands to remain in the cell which Plaintiff had already disobeyed.

Plaintiff's Undisputed Fact No. 19:

The OC spray caused Mr. Rodriguez pain in his eyes and lungs.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 50:1-6; 74:5-9.)

Defendants' Response to Plaintiff's Undisputed Fact No. 19:

19. **Disputed**. Plaintiff's subjective claims of respiratory distress are contradicted by the record. At a medical visit earlier in the afternoon, at approximately 2:00 p.m. on August 31, 2020, prior to the fire Plaintiff set at 6:15 p.m., which is at issue in this case, he complained of "mild SOB in setting of still fire in his cell[]" and was prescribed an albuterol inhaler. (Weall Aff., Exh. H, Medical Records, at DEF003847–49). However, at no time after the second fire and use of force at issue here did plaintiff ever request the inhaler he had just been prescribed. (Rothman Aff., Ex. F, Medical Records at DEF003844–46; Zangrilli Aff., Exh. N at 04:40–21:57.) His claim is further contradicted by his own statements and actions captured on the handheld video immediately following the incident, where he can be heard taunting staff virtually continuously for over nine minutes without any signs of shortness of breath. (Zangrilli Aff., Exh. N  at 04:40–13:15.) He is also heard contemporaneously mocking the effects of the spray, stating, "Spray me. I'll wash it off." (Zangrilli Aff., Exh. M at 5:48.)

Plaintiff's Undisputed Fact No. 20:

The officers commanded Mr. Rodriguez to put his hands behind his back so that he could be handcuffed.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 42:16-20.)

Defendants' Response to Plaintiff's Undisputed Fact No. 20:

20. **Undisputed**.

Plaintiff's Undisputed Fact No. 21:

> Mr. Rodriguez complied with the officers' order and did not resist.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 42:16-43:5.)

Defendants' Response to Plaintiff's Undisputed Fact No. 21:

21. **Undisputed** that Plaintiff was handcuffed after the OC spray was deployed.

Plaintiff's Undisputed Fact No. 22:

> Mr. Rodriguez was rear-cuffed and then taken from his cell to the elevator vestibule, where he was left for more than 15 minutes.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 42:16-43:5; Rothman Aff., Ex. C, UOF Package at DEF000014-15.)

Defendants' Response to Plaintiff's Undisputed Fact No. 22:

22. **Disputed**. Defendants admit that Plaintiff was rear-cuffed and taken to the elevator vestibule. Defendants dispute the characterization that Plaintiff was "left" there, as he was under the continuous supervision of ESU officers for the entire duration. (*See* Zangrilli Exh. N at 1:40–15:55.) The brief period spent in the vestibule was necessary to secure the area and ensure a safe escort to the decontamination area.

Plaintiff's Undisputed Fact No. 23:

> The handcuffs hurt Mr. Rodriguez's wrists.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 53:7-15, 74:5-9.)

Defendants' Response to Plaintiff's Undisputed Fact No. 23:

23. **Disputed**. Plaintiff's claim of pain is contradicted by his contemporaneous statements recorded on the handheld video, where he can be heard taunting officers, asking them to "Please break my wrists, slam me on the floor," and repeatedly demanding that they "tighten the cuffs, bro, tighten them more, hurt me." (Zangrilli Aff., Exh. N at 6:58, 7:23.)

Plaintiff's Undisputed Fact No. 24:

> Mr. Rodriguez asked to be taken to the decontamination shower.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 45:4-7.)

Defendants' Response to Plaintiff's Undisputed Fact No. 24:

24. **Undisputed**.

Plaintiff's Undisputed Fact No. 25:

>    Officers told Mr. Rodriguez to "shut up" and tightened Mr. Rodriguez's
>    handcuffs.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 45:7-9.)

Defendants' Response to Plaintiff's Undisputed Fact No. 25:

25. **Disputed**. This assertion is contradicted by video evidence showing officers escorting
    a belligerent Plaintiff who is yelling threats. (*See generally* Zangrilli Aff., Exh. N.)
    Furthermore, the video shows that when Plaintiff later calmly complained about his
    handcuffs and asked for them to be adjusted, officers did so, and Plaintiff responded,
    "Thank you." (Zangrilli Aff., Exh. N at 13:25–14:07.)

Plaintiff's Undisputed Fact No. 26:

>    Mr. Rodriguez was taken to intake and the decontamination shower.  (Rothman
>    Aff., Ex. C, UOF Package at DEF000015; Rothman Aff., Ex. B, Rodriguez Dep.
>    Tr. 45:12.)

Defendants' Response to Plaintiff's Undisputed Fact No. 26:

26. **Undisputed**.

Plaintiff's Undisputed Fact No. 27:

>    While he was decontaminating, Mr. Rodriguez asked to be taken to the medical
>    clinic for treatment.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 45:10-20.)

Defendants' Response to Plaintiff's Undisputed Fact No. 27:

27. **Undisputed**.

Plaintiff's Undisputed Fact No. 28:

>    Officers told him that he should deny his injuries at the clinic, "or else."
>    (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 45:10-17.)

Defendants' Response to Plaintiff's Undisputed Fact No. 28:

28. **Disputed**. This allegation is unsupported by evidence other than Plaintiff's
    uncorroborated, self-serving deposition testimony and is insufficient to create a
    genuine issue of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d
    Cir. 2005). Plaintiff also fails to identify which officer purportedly made the threat,

27

rendering the statement immaterial as to any named defendant's personal involvement.

Plaintiff's Undisputed Fact No. 29:

> Mr. Rodriguez was kept in the decontamination area for more than five hours before he was taken to the clinic. (Rothman Aff., Ex. C, UOF Package at DEF000016; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 45:20-46:1.)

Defendants' Response to Plaintiff's Undisputed Fact No. 29:

29. **Disputed**. The record shows that the five-hour delay in medical attention was a result of Plaintiff's own actions, as he "refused to be escorted to the Clinic within the four (4) hour timeframe." (Weall Aff., Exh. E, Facility Referral: U4068/2020 at DEF007748.) Plaintiff's allegation that he was "kept" in the decontamination area for five hours is supported only by his self-serving testimony, is contradicted by the record and is insufficient to create a genuine issue of material fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 30:

> Captain Shaday Gibson, the area supervisor, escorted Mr. Rodriguez from decontamination to the clinic. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 46:8-21, 47:19-20; Rothman Aff., Ex. D, Clinic Injury Logbook at DEF000494.)

Defendants' Response to Plaintiff's Undisputed Fact No. 30:

30. **Undisputed**.

Plaintiff's Undisputed Fact No. 31:

> Captain Gibson told Mr. Rodriguez that his personal property would not be returned to him unless he refused treatment at the clinic. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 46:23-47:3.)

Defendants' Response to Plaintiff's Undisputed Fact No. 31:

31. **Disputed**. This allegation is unsupported by evidence other than Plaintiff's uncorroborated, self-serving deposition testimony and is insufficient to create a genuine issue of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Furthermore, the contemporaneous medical records show that plaintiff verbally refused medical attention and refused to sign the standard medical form acknowledging his refusal. (Zangrilli Aff., Exh. P, Additional Medical Records at DEF003844–DEF003846.)

28

Plaintiff's Undisputed Fact No. 32:

      At the clinic, Captain Gibson told the doctor that Mr. Rodriguez was not injured and did not require treatment.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 47:4-9.)

Defendants' Response to Plaintiff's Undisputed Fact No. 32:

32. **Disputed**. This allegation is supported only by Plaintiff's uncorroborated, self-serving deposition testimony and is insufficient to create a genuine issue of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Plaintiff's Undisputed Fact No. 33:

      Mr. Rodriguez refused to be examined and denied injury.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 47:10-12; Rothman Aff., Ex. E, Injury to Inmate Report at DEF000445; Rothman Aff., Ex. F, Medical Records at DEF003844-46.)

Defendants' Response to Plaintiff's Undisputed Fact No. 33:

33. **Undisputed**.

Plaintiff's Undisputed Fact No. 34:

      The doctor attending to Mr. Rodriguez completed an Injury to Inmate report at 11:34 p.m., indicating that Mr. Rodriguez had "refuse[d] medical services." (Rothman Aff., Ex. E, Injury to Inmate Report at DEF000445.)

Defendants' Response to Plaintiff's Undisputed Fact No. 34:

34. **Undisputed**.

Plaintiff's Undisputed Fact No. 35:

      Mr. Rodriguez spent approximately five minutes in the clinic.  (Rothman Aff., Ex. D, Clinic Injury Logbook at DEF000494 (showing "Time In" as 11:30 p.m.); Rothman Aff., Ex. E, Injury to Inmate Report at DEF000445 (completed 11:34 p.m.); Rothman Aff., Ex. B, Rodriguez Dep. Tr. 48:4-5.)

Defendants' Response to Plaintiff's Undisputed Fact No. 35:

35. **Undisputed**.

Plaintiff's Undisputed Fact No. 36:

      Captain Gibson escorted Mr. Rodriguez back to his cell.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr.  49:9-14.)

Defendants' Response to Plaintiff's Undisputed Fact No. 36:

36. **Undisputed**.

Plaintiff's Undisputed Fact No. 37:

     Mr. Rodriguez's cell was filled with water, smoke residue, fire debris, and residue from OC spray.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 49:9-14.)

Defendants' Response to Plaintiff's Undisputed Fact No. 37:

37. **Disputed**. Plaintiff's subjective characterization of the cell's condition is supported only by his self-serving testimony. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 38:

     Despite the conditions in the cell, Mr. Rodriguez was ordered to step into his cell. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 49:9-14; Rothman Aff., Ex. G, SAC at ¶ 9.)

Defendants' Response to Plaintiff's Undisputed Fact No. 38:

38. **Disputed.** This allegation is supported only by Plaintiff's self-serving testimony. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 39:

     Mr. Rodriguez entered his cell and was kept locked in his cell for approximately the next 12 hours.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 49:17-19; Rothman Aff., Ex. G, SAC at ¶ 9.)

Defendants' Response to Plaintiff's Undisputed Fact No. 39:

39. **Disputed.** This allegation is supported only by Plaintiff's self-serving testimony and is uncorroborated by any documentary evidence or logbook entry. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

**B.    Mr. Rodriguez's Injuries.**

Plaintiff's Undisputed Fact No. 40:

     Mr. Rodriguez has been diagnosed with asthma since he was a child.  DOC was aware of Mr. Rodriguez's asthma prior to August 31, 2020.  (Rothman Aff.,

Ex. F, Medical Records at DEF003882, DEF003885, DEF003888, DEF003942, DEF004052; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 78:6-13.)

Defendants' Response to Plaintiff's Undisputed Fact No. 40:

40. **Disputed**. Plaintiff testified at his deposition, as reflected in the portions cited by plaintiff, that he was not diagnosed with asthma prior to his incarceration. (Weall Aff., Exh. C, Rodriguez Dep. Tr. 78:9–13.) Different treating professionals have on multiple occasions observed that Plaintiff was in no respiratory distress and, at times, deliberately under-performing on pulmonary tests. (*See* Zangrilli Aff., Exh. P at DEF006725 (peak-flow 350 L/min "with poor expiratory effort," SaO$_2$ 100 %, "no concern for acute asthma exacerbation"); DEF007099–100 (peak-flow 530 L/min, "rarely uses rescue inhaler[,]" improper inhaler technique noted); DEF002427–28 ("Pt claims SOB since smoke inhalation last evening, yet he was not carrying his inhaler and was in no acute distress on examination. Lungs clear and POx=100%.").)

Plaintiff's Undisputed Fact No. 41:

DOC has prescribed Mr. Rodriguez an albuterol rescue inhaler and an Advair inhaler.  (Rothman Aff., Ex. F, Medical Records at DEF003848, DEF003882, DEF003888-89, DEF003942, DEF004127.)

Defendants' Response to Plaintiff's Undisputed Fact No. 41:

41. **Undisputed**.

Plaintiff's Undisputed Fact No. 42:

Because of his asthma, DOC determined prior to August 31, 2020 that Mr. Rodriguez is contraindicated for the use of chemical spray, meaning that "OC spray . . . may not be used" on him.  (Rothman Aff., Ex. F, Medical Records at DEF003885, DEF003891, DEF003965 ("DOC requests contraindications for the use of stun shield [sic] and chemical agents . . . not a candidate for the use of chemical agent.  DOC made aware"), DEF004052 ("[Patient] with [history of] asthma, therefore, DOC informed that OC spray and stun shields may not be used."), DEF004174.)

Defendants' Response to Plaintiff's Undisputed Fact No. 42:

42. **Undisputed** that the cited medical records contain the quoted language. **Disputed** to the extent that Plaintiff seeks to impute knowledge of these contraindications to the individual defendants; there is no evidence in the record that any individual defendant was ever made aware of any alleged medical contraindication Plaintiff had to the use of OC spray or rear cuffing prior to the August 31, 2020 incident. Further, even if the record did demonstrate prior knowledge, the officers responded to a scene in which

Plaintiff was locked inside a cell filled with smoke and a burning fire, and their need to act quickly was paramount.

Plaintiff's Undisputed Fact No. 43:

> DOC Directive 4510R-H, titled "Chemical Agents," requires that chemical agents be "used with the utmost discretion" and declares that chemical agents may never be employed to "punish, discipline, assault, or retaliate against an inmate." (Rothman Aff., Ex. K, Directive 4510R-H at DEF007610, 21.)

Defendants' Response to Plaintiff's Undisputed Fact No. 43:

43. **Undisputed** that Directive 4510R-H contains the quoted language. **Disputed** to the extent that plaintiff intimates that this internal directive corresponds to the constitutional standard for excessive force claims.

Plaintiff's Undisputed Fact No. 44:

> Directive 4510R-H further sets forth that, prior to the use of OC spray, "the Tour Commander or his/her designee shall notify facility health services staff to determine from such staff whether there is a medical reason (contraindication) why chemical agents should not be used.  Where time and circumstances permit (e.g., anticipated use of force situations), and regardless of the type of chemical agent that may be used, the tour commander should consult with medical staff for contraindications.  In emergency circumstances where a delay in the use of a chemical agent would present an immediate threat of death or serious injury or would severely threaten the safety or security of the facility, no such notification must be made nor medical clearance obtained."  (Rothman Aff., Ex. K, Directive 4510R-H at DEF007611.)

Defendants' Response to Plaintiff's Undisputed Fact No. 44:

44. **Undisputed** that Directive 4510R-H contains the quoted language. **Disputed** to the extent that plaintiff intimates that this internal directive corresponds to the constitutional standard for excessive force claims.

Plaintiff's Undisputed Fact No. 45:

> The use of OC spray on August 31, 2020 exacerbated Mr. Rodriguez's asthma. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 50:1-3, 74:5-6.)

Defendants' Response to Plaintiff's Undisputed Fact No. 45:

45. **Disputed**. The only support plaintiff offers is his own self-serving deposition testimony, which constitutes lay opinion that cannot establish medical causation. Plaintiff has disclosed no expert witness and cites no contemporaneous medical record showing any objective sign of an asthma flare following the August 31, 2020, OC deployment. In fact, Two days after the fire on August 31, 2020, clinic staff recorded Rodriguez's vitals at $SpO_2$ 99 percent (room air), respiratory rate 15 bpm, blood pressure 124/76, "no respiratory distress" during an examination on September 2, 2020 (Zangrilli Aff., Exh. P at DEF003740). Four weeks earlier he exhibited the same normal physiology: on admission to Bellevue on August 4, 2020, his chart notes $SpO_2$ 98 percent, clear breath sounds, regular/unlabored respirations (*Id.* at DEF001142.); and at discharge the next morning on August 5, 2020, his vitals remained $SpO_2$ 98 percent, resting respiratory rate of 18 bpm, "patient stable for discharge." (*Id.* at DEF001167). These objective measurements shortly before and immediately after the August 31st incident show no decline in pulmonary function, contradicting Rodriguez's claim that the incident aggravated his asthma. Defendants also note that this assertion is contradicted by the handheld video evidence, where plaintiff can be heard taunting staff virtually continuously for over nine minutes without any signs of shortness of breath. (Zangrilli Aff., Exh. N at 04:40–13:15.) He is also heard mocking the effects of the spray, stating, "Spray me. I'll wash it off." (Zangrilli Aff., Exh. N at 5:48.) Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 46:

      The use of OC spray on August 31, 2020 caused harm to Mr. Rodriguez's eyes, worsening his vision. He now requires the use of glasses. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 50:1-13, 54:2-4, 74:5-9, 76:12-13, 83:13-15; Rothman Aff., Ex. F, Medical Records at DEF002558, DEF002604, DEF002899; DEF003121, DEF003186.)

Defendants' Response to Plaintiff's Undisputed Fact No. 46:

46. **Disputed.** Plaintiff offers no relevant, admissible evidence to support this causal inference. His medical records show that he did not receive evaluation nor treatment for any vision problems following the August 31, 2020, incident until he saw an optometrist on April 13, 2021, more than six months later. (Zangrilli Aff., Exh. P, Additional Medical Records, DEF002893–DEF002895.) Plaintiff did not report any blurred vision until November 10, 2020, at which time the treating physician recorded plaintiff "reports L. eye blurry vision x 2 weeks"—in other words, Plaintiff had been experiencing symptoms since late October, 2020—and referred him to optometry for the April 13th appointment. (Zangrilli Aff., Exh. P, Additional Medical Records, DEF003736, DEF002899.) In the interim, Plaintiff on four separate occasions exposed his own eyes to smoke and flames through his own misconduct by lighting fires in his cell, breaking any plausible causal link to the August 31, 2020 event. (*See* Zangrilli Aff., Exh. Q, DEF007847 (December 13, 2020 fire) DEF007854 (March 12, 2021 fire), DEF007855 (March 19, 2021 fire), DEF007856 (March 26, 2021 fire).)

These incidents came after the August 31ˢᵗ fire in which OC was used, and each exposed plaintiff's eyes to additional irritants. The medical notes from plaintiff's optometry appointment on April 13, 2021 further state "LEE × 6 y," indicating that plaintiff's last eye exam had been six years earlier. (Zangrilli Aff., Exh. P, Additional Medical Records, DEF002893–DEF002895.) In the six years preceding plaintiff's April 13, 2021, eye exam, OC Spray was deployed against Plaintiff on at least five occasions, establishing a long-standing pattern inconsistent with a sudden, OC-induced visual deficit. (See, e.g., Zangrilli Aff., Exh. Q, Incident Reports, DEF007797 (July 21, 2016), DEF007798 (March 29, 2017), DEF007799 (October 25, 2017), DEF007802 (May 12, 2018), DEF007804 (November 15, 2018).) Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 47:

> The assault on Mr. Rodriguez exacerbated his anxiety and depression. He suffers from paranoia and has difficulty sleeping. (Rothman Aff., Ex. F, Medical Records at DEF002099, DEF003256, DEF003580; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 50:1-6, 54:17-25.)

Defendants' Response to Plaintiff's Undisputed Fact No. 47:

47. **Disputed**. The term "assault" is a legal conclusion that defendants dispute. Defendants further state that these allegations are unsupported by admissible evidence. The pages plaintiff cites do not show that the August 31, 2020, incident "exacerbated" any psychiatric condition; they merely memorialize Plaintiff's own lay complaints, which the records themselves tie to different causes. A medical note from January 26, 2021, shows he complained of paranoia that "someone would poison my food," and it was noted that just one month prior, on December 22, 2020, Plaintiff himself had requested to be taken off his psychiatric medications because "he no longer needed these meds." (Rothman Aff., Ex. F at DEF002099). The second cited record shows his mental health complaints stemmed from nightmares about a past alleged sexual assault. (Rothman Aff., Ex. F at DEF003256.) The final cited record merely includes the statement in the mental health notes that "Patient stated that he is depressed and want[s] to end his life" (Rothman Aff., Ex. F at DEF003580.) Plaintiff offers no expert testimony or relevant, admissible evidence to bridge the gap between these chronic, multifactorial psychiatric conditions and any act by defendants.

Plaintiff's Undisputed Fact No. 48:

> On December 19, 2020, at approximately 2:15 a.m., Mr. Rodriguez attempted suicide by hanging in his cell. (Rothman Aff., Ex. F, Medical Records at DEF003531-40; Rothman Aff. Ex. H, Unusual Incident Report at DEF007731; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 82:6-8.)

Defendants' Response to Plaintiff's Undisputed Fact No. 48:

48. **Undisputed** that the records reflect a suicide attempt on that date. Defendants dispute any implied causal connection to the use of force incident on August 31, 2020, which is an unsupported medical conclusion. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

## C.    Grievance/Exhaustion of Administrative Remedies.

Plaintiff's Undisputed Fact No. 49:

> Mr. Rodriguez requested and received a grievance form from the grievance officer.  (Rothman Aff., Ex. G, SAC at ¶ 19.)

Defendants' Response to Plaintiff's Undisputed Fact No. 49:

49. **Undisputed.** Defendants did not move for summary judgment on plaintiff's assault or excessive force claims on the basis of failure to exhaust administrative remedies. (*See* Defs. Mem. of Law at 5-8.) Therefore, the availability of the grievance process for such claims is not material to any argument raised in defendants' motion, and these statements cannot raise a genuine issue of material fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 50:

> Mr. Rodriguez was told by the grievance officer that allegations regarding the use of force by MDC staff were not grievable.  (Rothman Aff., Ex. G, SAC at ¶ 19.)

Defendants' Response to Plaintiff's Undisputed Fact No. 50:

50. **Undisputed.** Defendants did not move for summary judgment on plaintiff's assault or excessive force claims on the basis of failure to exhaust administrative remedies. (*See* Defs. Mem. of Law at 5-8.) Therefore, the availability of the grievance process for such claims is not material to any argument raised in defendants' motion, and these statements cannot raise a genuine issue of material fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 51:

> The grievance form itself stated that "Assault Allegation," "Harassment Allegation," and "Staff Complaint" were "categories not subject to the grievance process."  (Rothman Aff., Ex. I, Grievance Form)

Defendants' Response to Plaintiff's Undisputed Fact No. 51:

51. **Undisputed.** Defendants did not move for summary judgment on Plaintiff's assault or excessive force claims on the basis of failure to exhaust administrative remedies. (*See*

Defs. Mem. of Law at 5-8.) Therefore, the availability of the grievance process for such claims is not material to any argument raised in Defendants' motion, and these statements cannot raise a genuine issue of material fact sufficient to defeat summary judgment.

**D.      Retaliation Allegations.**

Plaintiff's Undisputed Fact No. 52:

On December 4, 2020, Officer Galuzevskiy approached Mr. Rodriguez's cell and asked if Mr. Rodriguez was suing him.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 55:12-18.)

Defendants' Response to Plaintiff's Undisputed Fact No. 52:

52. **Disputed**. This allegation is supported only by Plaintiff's uncorroborated, self-serving deposition testimony and is therefore insufficient to create a genuine issue of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Furthermore, as set forth in Defendants' original Statement of Undisputed Facts, at the time of this alleged incident, Officer Galuzevskiy had not been named as a defendant in this action, rendering Plaintiff's allegation implausible. (Defs.' 56.1 Stmt. ¶ 30.) Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 53:

Afraid of retaliation, Mr. Rodriguez told Officer Galuzevskiy that he was not being sued.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 55:18.)

Defendants' Response to Plaintiff's Undisputed Fact No. 53:

53. **Disputed**. Plaintiff's subjective state of mind is not an undisputed fact, and the underlying allegation is supported only by his own self-serving testimony. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 54:

On December 15, 2020, Officer Galuzevskiy confronted Mr. Rodriguez in the shower area.  (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 61:12-18.)

Defendants' Response to Plaintiff's Undisputed Fact No. 54:

54. **Disputed**. This allegation is supported only by plaintiff's uncorroborated, self-serving deposition testimony and is therefore insufficient to create a genuine issue of material fact. *See Jeffreys*, 426 F.3d at 554.

Plaintiff's Undisputed Fact No. 55:

> Officer Galuzevskiy threatened Mr. Rodriguez that if he did not drop his lawsuit he would be "deadlocked" in his cell and not permitted to leave or access services. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 61:12-18, 65:7-12.)

Defendants' Response to Plaintiff's Undisputed Fact No. 55:

55. **Disputed**. This allegation is supported only by plaintiff's uncorroborated, self-serving testimony. *See Jeffreys*, 426 F.3d at 554. Furthermore, as set forth in Defendants' original Statement of Undisputed Facts, at the time of this alleged incident, Officer Galuzevskiy had not been named as a defendant in this action, rendering Plaintiff's allegation implausible. (Defs.' 56.1 Stmt. ¶ 34.) Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 56:

> Mr. Rodriguez was afraid and did not answer. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 67:1-3.)

Defendants' Response to Plaintiff's Undisputed Fact No. 56:

56. **Disputed**. Plaintiff's subjective state of mind is not an undisputed fact. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 57:

> On December 18, 2020, Officer Galuzevskiy approached Mr. Rodriguez's cell, pointed at Mr. Rodriguez, and yelled: "When I am here, you stay in your cell." (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 67:9-13, 68:17-25.)

Defendants' Response to Plaintiff's Undisputed Fact No. 57:

57. **Disputed**. This allegation is supported only by Plaintiff's uncorroborated, self-serving deposition testimony. *See Jeffreys*, 426 F.3d at 554. Defendants further state that the alleged statement does not constitute an adverse action and is therefore immaterial to Plaintiff's retaliation claim and cannot defeat summary judgment.

Plaintiff's Undisputed Fact No. 58:

> Mr. Rodriguez did not respond and retreated into his cell out of fear. (Rothman Aff., Ex. B, Rodriguez Dep. Tr. 69:1-2; Rothman Aff., Ex. G, SAC at ¶ 13.)

Defendants' Response to Plaintiff's Undisputed Fact No. 58:

58. **Disputed**. Plaintiff's subjective state of mind and actions are not undisputed facts, and the underlying allegation is supported only by his own self-serving testimony. *See Jeffreys*, 426 F.3d at 554. Defendants further state this is not a material issue of fact sufficient to defeat summary judgment.

Plaintiff's Undisputed Fact No. 59:

> Mr. Rodriguez's interactions with Officer Galuzevskiy contributed to his mental health struggles and suicide attempt on December 19, 2020. (Rothman Aff., Ex. G, SAC at ¶ 14; Rothman Aff., Ex. B, Rodriguez Dep. Tr. 81:23-82:5.)

Defendants' Response to Plaintiff's Undisputed Fact No. 59:

59. **Disputed**. The cited evidence is limited to plaintiff's own pleadings and lay testimony, which are inadmissible to prove medical causation, and which are contradicted by the record, including plaintiff's own statements to medical staff the day after the incident. At that time, he described the incident as a "stunt" and stated that he was having a "bad day" after receiving a "bad phone call." (Zangrilli Aff., Exh. P at DEF003504.) This contemporaneous account of his motivations makes no mention of Officer Galuzevskiy. (*Id.*) Less than two weeks earlier, during a December 6–7, 2020 admission to Bellevue, plaintiff admitted to a doctor that he "faked" a previous suicide attempt by hanging in Rikers in February of 2018 (Zangrilli Aff., Exh. P at DEF001208–09.) Also, during his December 6–7, 2020 admission, plaintiff commented he was "'looking at 25 years soon' and expressed conditional suicidal ideations stating, 'if this what it will be like I'd rather not live.'" (Zangrilli Aff., Exh. P at DEF001209.) He further reported his agitation was linked to his frustration with DOC procedures, not any interaction with Officer Galuzevskiy, and that "led him to remain in his cell, 'splash' DOC officers, and engage in other behaviors to provoke them, such as placing a shirt on a pipe and threatening to hang himself. He stated that he engaged in these behaviors because he feels that DOC hasn't been meeting his needs and would like for this to change." (Zangrilli Aff., Exh. P at DEF001210.)

Dated:          New York, New York
                July 10, 2025

                                MURIEL GOODE-TRUFANT
                                Corporation Counsel - City of New York
                                *Attorney for Defendants City of New York,*
                                  *Moise, Galuzevskiy, Williams, Ferraro and*
                                  *Gibson*
                                100 Church Street
                                New York, New York 10007
                                (212) 356-2486

By:  /s/ *Joseph Zangrilli*
_____
Joseph Zangrilli
John McLaughlin
*Special Federal Litigation Division*


To:    **VIA CERTIFIED FIRST CLASS MAIL**
Peter Rodriguez
#22B2287
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024
*Plaintiff Pro Se*