20 Civ. 9840 (JHR) (BCM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER RODRIGUEZ,

Plaintiff,

-against-

CITY OF NEW YORK, E.S.U. CAPTAIN
MOISE #1451, E.S.U. OFFICER GALUZEVSKIY
#8957, E.S.U. OFFICER TEMIR WILLIAMS
#11475, CORRECTION OFFICER FERRARO
#1805, CAPTAIN GIBSON,

Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Moise,*
*Galuzevskiy, Williams, Ferraro and Gibson*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Joseph Zangrilli*
*Tel:  (212) 356-2657*
*Of Counsel: John McLaughlin*
*Tel:  (212) 356-2670*
*Matter No.:  2024-064071*

## PRELIMINARY STATEMENT

Plaintiff's opposition asserts a new set of undisputed facts that are heavily contradicted by objective evidence in the record and cannot overcome three dispositive facts established by the objective video evidence or Plaintiff's own recorded admissions. First, when officers opened his cell door, glowing embers were actively falling from above, refuting his claim that there was "no active fire." Second, rather than surrendering with raised hands as he now claims, plaintiff turned his back to the officers, concealed his hands, and moved into the smoke where he "was waiting" to attack staff with a blade. Third, despite claiming severe injuries, plaintiff taunted officers for nine minutes without signs of respiratory distress, denied injury to medical staff, and showed normal vital signs both before and after the incident.

The opposition's legal arguments fare no better. Plaintiff failed to exhaust administrative remedies. His alleged injuries—mild shortness of breath and eye complaints that appeared nine weeks later—are legally *de minimis*. His First Amendment retaliation claim relies on implausible allegations that Officer Galuzevskiy threatened him over a lawsuit that hadn't yet named him as a defendant. And he relies on DOC's contraindication policy but ignores the explicit emergency exception that applies in situations such as active fires.

## ARGUMENT

### THE UNDISPUTED EVIDENCE ESTABLISHES THAT OFFICERS WILLIAMS AND GALUZEVSKIY DID NOT USE EXCESSIVE FORCE

**A.    The Objective Evidence Demonstrates That The Force Used Was Reasonable.**

Plaintiff's argument that summary judgment is inappropriate relies on two disproven predicates—(1) that "there was no active fire" when officers arrived (Opp. at 3, 13.); and (2) that he was already "in surrender mode" with raised hands (Defs.' Resp. to PSOF ¶

14.)[1]—which he says render both the fire-extinguisher discharge and the brief burst of oleoresin capsicum ("OC") spray burst excessive. The record says otherwise: video shows cinders raining from the cell ceiling as the door opens and captures Plaintiff turning his back, concealing his hands in smoke, then lunging toward the officers after ignoring at least two verbal commands. (Defs.' Resp. to PSOF ¶¶ 11–14, 16–18.)  Under *Kingsley*, force is objectively unreasonable only if, in light of the need for force, the amount used, the security threat, and any effort to temper it, no reasonable officer would have acted likewise. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

Courts applying those factors hold that (i) discharging a fire extinguisher to quell an inmate-set blaze, and (ii) using a short burst of OC spray to regain control, are not per se excessive when done in good faith to protect safety; even inadvertent overspray will not rise to the level of a constitutional violation. *See Burke v. Browns*, 653 F. App'x 683, 698-99 (11th Cir. 2016) (spraying chemical agent into inmate's cell to put out a fire started by that inmate "is a response commensurate to the significant threat posed by a prison fire."); *Stinson v. City of New York*, 2021 WL 3438284, at *13 (S.D.N.Y.) (use of pepper spray to maintain or restore discipline not excessive force).

First, the claim that "there was no active fire" when officers entered Plaintiff's cell is demonstrably false. (Opp. at 3, 13.) One of the videos capturing the incident shows glowing embers actively falling from the top of the cell as the door opens. (Defs.' Resp. to PSOF

---

[1] Plaintiff's opposition numbered his "Statement of Additional Facts" anew, beginning at ¶ 1 rather than continuing the sequence used in Defendants' Statement of Facts ("DSOF"). To avoid confusion, citations in this brief use "DSOF ¶ __" for Defendants' original numbered paragraphs and "Defs.' Resp. to PSOF ¶ __" for the corresponding paragraphs in Plaintiff's separately numbered submission.

¶¶ 11, 13; Zangrilli Aff., Exs. M, O at 18:16:05–18:16:07.) The video further shows Officer Galuzevskiy spraying the fire extinguisher around and above Plaintiff, not at his face, as he maintains. (Defs.' Resp. to PSOF ¶ 14.) *Cf. Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (holding that an Eighth Amendment assault claim could not lie if plaintiff was "inadvertently" sprayed).

Second, Plaintiff's claim of "surrender mode" with raised hands is contradicted by both the video evidence and his own recorded admission. The footage depicts Plaintiff turning his back to officers with concealed hands, move out of camera view concealing himself in the smoke, then lunge toward the cell door. (Defs.' Resp. to PSOF ¶¶ 14, 16.) Minutes later, Plaintiff told the officers "you should have just come in to visit[,]" and that he "was waiting" and "was going to slash one of y'all n*****. But I never got caught on camera." (Defs.' Resp. to PSOF ¶¶ 14; Zangrilli Aff., Ex. N at 9:24–9:34.) Given the presence of a fire, Plaintiff's disobeying direct orders and deliberately hiding his hands from staff, then suddenly turning to face officers, no reasonable jury could find the use of force unreasonable. *Cf. Boomer v. Lanigan*, No. 00 Civ. 5540, 2002 WL 31413804, at *5-6 (S.D.N.Y. Oct. 25, 2002) (finding no excessive force where pre-trial detainee sprayed after refusing repeated orders to remove his arm from his cell's food slot); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 369 (S.D.N.Y. 2018) (granting summary judgment for defendants and finding "use of the pepper spray . . . was permissible in the context of needing to maintain a baseline of order in the prison system," where "Plaintiff repeatedly resisted multiple officers' orders.").

The video further refutes Plaintiff's claim that officers issued no warnings. Clear audio captures an officer commanding Plaintiff to step out of his cell when the door opens, repeated 12 seconds later, which Plaintiff disobeyed while lunging at staff. (Defs.' Resp. to PSOF ¶¶ 16, 18; Zangrilli Aff., Ex. N at 0:29, 0:40.) No audio supports Plaintiff's assertion that

Officer Galuzevskiy or any other officer said, "get him." (Defs.' Resp. to PSOF ¶ 17.) Neither did any officer tighten Plaintiff's cuffs and tell him to "shut up"—rather, Plaintiff taunts, "tighten them more, hurt me," and, when he later asks for relief, officers loosen the cuffs and Plaintiff says, "thank you." (Defs.' Resp. to PSOF ¶ 25).

Plaintiff's reliance on DOC's contraindication policy ignores the emergency exception that applies here. While Plaintiff notes that DOC policy requires medical consultation before using chemical agents on inmates with contraindications, he concedes that "[i]n emergency circumstances where a delay in the use of a chemical agent would present an immediate threat of death or serious injury," officers may deploy chemical agents without medical clearance. (PSOF ¶ 44.)

This case presents precisely such emergency circumstances. Officers were responding to an active fire, and Plaintiff—who admittedly planned to "slash" officers with a concealed blade—disobeyed direct orders and lunged aggressively at them. This created an immediate threat of serious injury that justified the use of OC spray under the policy's own terms.

Moreover, Plaintiff identifies no evidence that Officers Williams or Lewis had actual knowledge of his medical contraindication. Personal liability under § 1983 requires personal involvement and knowledge. *See Perkins v. Schriro*, No. 11 Civ. 814, 2012 WL 5909892, at *2 (S.D.N.Y. Nov. 21, 2012) (finding corrections officer did not act in a sufficiently culpable manner when he was not made specifically aware of plaintiff's condition or its gravity beyond the fact that the condition was listed on a medical transfer form). The individual officers responding to an emergent fire and security threat cannot be held liable for alleged failures in

communicating medical information, particularly when their actions fell within the emergency exception to DOC policy.

**B.    Plaintiff's Claimed Injuries Do Not Support His Excessive Force Claim.**

Plaintiff's opposition mischaracterizes Defendants' de minimis injury argument. The issue is not merely the absence of visible injuries on August 31, 2020, but the overwhelming evidence contradicting Plaintiff's claims of harm. Two days after the incident, clinic staff documented oxygen saturation of 99 percent on room air, a respiratory rate of 15 breaths per minute, blood pressure 124/76, and "no respiratory distress[.]" (Defs' Resp. to PSOF ¶ 45.) On August 4th, before the OC exposure, he presented with virtually identical vitals at Bellevue hospital. (*Id.*) Plaintiff was not diagnosed with asthma before his incarceration, and his medical records since then indicate a long history of medical professionals observing normal respiration, high blood oxygenation, rare and improper use of his inhaler, and deliberate underperformance on objective pulmonary tests. (Defs' Resp. to PSOF ¶ 40.) *Cf. Genao v. City of New York*, No. 21 Civ. 301, 2024 WL 947439 (S.D.N.Y. Jan. 4, 2024) (granting summary judgment on a deliberate indifference claim in a fact-matched Rikers case where clinic records likewise indicated "regular" respiration and "no serious injury" within an hour of exposure), *report and recommendation adopted*, 2024 WL 515246 (S.D.N.Y. Feb. 9, 2024)

The video shows Plaintiff taunting officers continuously for several minutes without any signs of respiratory distress, even mocking the spray's effects: "Spray me. I'll wash it off." (Defs.' Resp. to PSOF ¶¶ 19, 45; Zangrilli Aff., Ex. N at 4:40–13:15, 5:48.)

Plaintiff's uncorroborated allegation that he was coerced into refusing treatment is undermined by his conduct earlier that same day. At roughly 2:00 p.m. on August 31, 2020— hours before the 6:15 p.m. fire that underlies this case—Plaintiff went to the clinic, reported "mild SOB in setting of still fire in his cell," and was issued an albuterol inhaler. (DSOF ¶ 24.)

Nevertheless, he refused further medical treatment, and refused to sign the medical refusal form, just as he would do after the second fire, *the fire relating to this incident*. (*Id.*) After the second fire and alleged assault, despite his claims of injury, he never requested his newly prescribed inhaler, refused to sign the medical refusal form, and denied any injury—exactly as he had done after the first fire. (*Id.*)  The record also shows that, immediately following the fire, when Plaintiff calmly complained about his handcuffs and asked for them to be adjusted, the officers accommodated his request. (Defs' Resp. to PSOF ¶ 25.) Had the plaintiff been in the respiratory distress he now alleges, he could have requested his inhaler.

Plaintiff's belated claim that the OC burst damaged his eyesight cannot survive based on the record. He voiced no ocular complaint on the night of the incident or at any sick-call encounter during September and October. (Defs.' Resp. to PSOF ¶ 46) The first reference appears in the November 10, 2020, progress note, where a physician recorded that Plaintiff "reports L. eye blurry vision × 2 weeks," meaning the symptom began only in late October— nine weeks after the spray. (*Id.*) At that point, the provider issued a routine referral for April 13, 2021, plaintiff's first eye exam in six years. (*Id.*). During the intervening months, Plaintiff set four additional fires in his cell—December 13, 2020, March 12, 2021, March 19, 2021, and March 26, 2021—each dousing the area in smoke and extinguisher chemicals (*Id.*). He had also been pepper-sprayed at least five times in the six years since his previous eye exam (*Id.*). With no contemporaneous findings, a nine-week asymptomatic gap, repeated self-inflicted smoke exposure, and multiple prior OC events, Plaintiff offers nothing but pure speculation to bridge causation.

Taken together, the objective vitals, video evidence, and Plaintiff's own behavior confirm that any discomfort was fleeting and legally de minimis, foreclosing his excessive-force claim

**C.    At a Minimum, the Individual Defendants Are Entitled to Qualified Immunity.[2]**

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. Aug. 28, 2013) (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-34 (2d Cir. 2010)). (*See also* MSJ, ECF No. 146, at Point IX.) Plaintiff's opposition fails to identify any clearly established law prohibiting officers from using a fire extinguisher when glowing embers are falling from a cell or deploying OC spray when an inmate disobeys orders and lunges at officers while planning an armed attack. As such, Defendants are entitled to qualified immunity.

**POINT II**

**CAPTAIN MOISE HAD NO DUTY TO INTERVENE IN LAWFUL CONDUCT**

A "failure to intervene claim is contingent upon the disposition of the primary claims underlying [it]." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012). Further, the duty to intervene arises only when an officer "observes [an unconstitutional]

---

[2] To the extent Plaintiff argues the qualified immunity defense has been waived as to any specific claims, Defendants note the defense was raised in Defendants' answers (ECF Nos. 53, 95) and should be considered here.

use of force *and has sufficient time to act to prevent it.*" *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *see also Anderson v. Branen*, 17 F.3d 552, 557–58 (2d Cir. 1994).

As shown in Point I, the use of a water-based extinguisher and OC deployment were reasonable responses to an inmate-set fire and an immediate threat of violence. Where the force employed is lawful, there is nothing to "intervene" against, and any derivative claim fails as a matter of law. *Matthews*, 889 F. Supp. at 443–44. Captain Moise's only affirmative act before the use of force was to order Officer Ferraro to leave with the first fire extinguisher (Defs.' 56.1 ¶ 15.), after which Moise was behind a team in a smoke-filled gallery, while the fire extinguisher was sprayed for only 13 seconds (Defs' Resp. to PSOF ¶ 13.) followed by a two-second burst of OC spray (Defs' Resp. to PSOF ¶ 18.). Under the circumstances, no reasonable jury could conclude that Captain Moise had a realistic opportunity to intervene. *See Anderson*, 17 F.3d 552, 557–58 (2d Cir. 1994); *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014).

**POINT III**

**PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW**

As established in Defendants' Memorandum of Law (MSJ at 17-19), mere verbal threats without concrete implementation cannot sustain a First Amendment claim. Plaintiff's attempt to elevate Officer Galuzevskiy's alleged statements to constitutional violations fails for multiple independent reasons.

The temporal impossibility of Plaintiff's allegations remains unrebutted. Officer Galuzevskiy was not identified by name or shield number in any complaint filed before December 21, 2020. (DSOF ¶¶ 30, 34, 37.) Plaintiff offers no explanation for how Officer Galuzevskiy would have known about, much less been motivated to retaliate for a lawsuit that did not name him. *Cf. Terry v. Hulse*, No. 16 Civ. 252, 2018 WL 4682784, at *11 (S.D.N.Y.

Sept. 28, 2018) (holding officers' verbal threats did not constitute adverse action where the Plaintiff did "not know the names of the officers who threatened him[.]").

Plaintiff's reliance on cases finding verbal threats actionable is misplaced. Unlike the "specific and direct" threat in *Murray v. Orange County*, No. 18 Civ. 634 (VB), 2019 WL 3765770, at *4 (S.D.N.Y. Aug. 9, 2019), the December 18, 2020, remark, "while I'm here, you stay in your cell"—which Plaintiff ties most closely to his suicide attempt—merely reiterates routine security practice. Inmates have no constitutional entitlement to roam outside their cells whenever an officer is present, and an order enforcing such a norm is not an adverse action capable of deterring a prisoner of ordinary firmness from exercising his rights. *Davis v. Goord*, 320 F.3d 346, 353–54 (2d Cir. 2003). Furthermore, confining an inmate to his cell while staff work nearby is plainly "reasonably related to legitimate penological interests[]" under *Turner v. Safley*, 482 U.S. 78, 89 (1987). The statement cannot be construed as a threat at all, much less one that supports a retaliation claim.

Plaintiff's attempt to link his December 19th suicide attempt to Officer Galuzevskiy's alleged statements is also contradicted by his own contemporaneous statements to medical staff. The day after the incident, Plaintiff described it as a "stunt" resulting from a "bad day" after receiving a "bad phone call"—making no mention whatsoever of Officer Galuzevskiy. (Defs.' Resp. to PSOF ¶ 59.) Less than two weeks earlier, during a December 6–7, 2020 hospitalization, Plaintiff explicitly linked his suicidal ideation to facing "25 years" in prison and frustration with DOC procedures generally—not to any specific officer's conduct. (*Id.*) He also admitted to previously "faking" a suicide attempt by hanging. (*Id.*)

Plaintiff's continued vigorous prosecution of this lawsuit—filing amended complaints on December 21, 2020, and February 9, 2021—conclusively demonstrates that no

chilling effect occurred. The alleged verbal exchanges, even if credited, constitute precisely the de minimis conduct that cannot support constitutional claims. *Quezada v. Roy*, 2015 WL 5970355, at *20 (S.D.N.Y. Oct. 13, 2015).

## POINT IV

### PLAINTIFF HAS ABANDONED NINE OF THE TWELVE CLAIMS RAISED IN DEFENDANTS' MOTION

Plaintiff's opposition disputes the appropriateness of Summary Judgment on the claims of excessive force (*See* MSJ, Point IV; Pl. Opp., Point I.), failure to intervene solely as to Captain Moise (*See* MSJ, Point X; Pl. Opp., Point II), and First-Amendment retaliation (*See* MSJ, Point VI; Pl. Opp., Point III). No response is offered on any other cause of action or defense. By remaining silent, Plaintiff has implicitly conceded that PLRA exhaustion bars all claims that required grievance review (MSJ, Point I.); and that deliberate indifference, state-law, *Monell*, supervisory-liability, and Officer Ferraro claims fail for the reasons set out in Points II, III, VII, VIII, XI, XII. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (affirming district court's decision to deem claims abandoned on summary judgment when non-moving party's opposition did not address them).

## CONCLUSION

For the reasons set forth herein, defendants City of New York, Peter Ferraro, Aleksandr Galuzevskiy, Shaday Gibson, Bonar Moise, and Temir Williams respectfully request that the Court grant their motion for summary judgment on all claims, together with such other and further relief as the Court deems just and proper.[3]

Dated:        New York, NY
              July 10, 2025

                              MURIEL GOODE-TRUFANT
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants City of New York,*
                              *  Moise, Galuzevskiy, Williams, Ferraro and*
                              *  Gibson*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2670

                          By: */s/ Joseph Zangrilli*
                              Joseph Zangrilli & John McLaughlin
                              *Senior Counsel*
                              Special Federal Litigation


Cc:     **VIA CERTIFIED FIRST CLASS MAIL**
        Peter Rodriguez
        #22B2287
        Auburn Correctional Facility
        P.O. Box 618
        Auburn, NY 13024
        *Plaintiff Pro Se*

---

[3] In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 2903. I have relied on the word count function of Microsoft Word to prepare this certification.